**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| VB Assets, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 26-443-MN |
| | ) | |
| Google LLC; and YouTube, LLC, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

# FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff VB Assets, LLC ("Plaintiff" or "VoiceBox") brings this First Amended Complaint against defendants Google LLC and YouTube, LLC (collectively, "Defendants" or "Google") and alleges, on personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

## NATURE OF THE CASE

1. This is an action for patent infringement under title 35 of the United States Code.

2. VoiceBox, through its predecessor companies VoiceBox Technologies Corporation and VoiceBox Technologies, Inc. (collectively "VoiceBox Technologies"), pioneered voice-based natural language understanding and Artificial Intelligence ("AI") technology. In recognition of their many innovations, the U.S. Patent & Trademark Office awarded and issued the following United States Patents (collectively "the VoiceBox Patents"):

| Family | U.S. Patent No. |
|---|---|
| Cooperative Conversations | 8,073,681 ("the '681 patent")<br>8,515,765 ("the '765 patent")<br>10,297,249 ("the '249 patent")<br>10,510,341 ("the '341 patent")<br>10,755,699 ("the '699 patent") |
| Voice Ads | 7,818,176 ("the '176 patent")<br>8,527,274 ("the '274 patent")<br>8,886,536 ("the '536 patent")<br>9,269,097 ("the '097 patent")<br>12,236,456 ("the '456 patent") |
| Voice Commerce | 11,087,385 ("the '385 patent") |

3. The innovations in the VoiceBox Patents are fundamental to the development of voice-based AI systems.

4. As set forth in more detail below, Google is and has been infringing the VoiceBox Patents and continues to do so through the present date. Such infringement includes Google—on its own, by conduct attributable to Google, by conduct for which Google is legally responsible, or a combination of the foregoing—performing every step of the patented methods in the VoiceBox Patents. Such infringement also includes inducing others to perform every step of the patented methods and contributing to others' performance of the same. Google's infringement is based on the instrumentalities listed below ("Google AI Products"):

a) Google Assistant virtual assistant, Gemini personal AI assistant, Google voice search using a microphone button or similar instrumentality to search Google via voice; YouTube voice search using a microphone button or similar instrumentality to search Google via voice;

b) Software that implements or allows a user to interact with Google Assistant, Gemini, Google voice search, or YouTube voice search, including:

   i. Google's AI Hypercomputer, along with other services and APIs for Google Assistant, Gemini, Google search; and YouTube;

   ii. The Android, Android XR, ChromeOS, Wear OS, and Fuchsia operating systems;

   iii. Smartphone apps, tablet apps, browsers, and web apps, including Google Assistant, Gemini, Google, Google Search, Google AI Mode, Google Shopping, YouTube, YouTube Music, Google TV, Google Workspace (Docs, Sheets, Slides, Gmail, Meet, Drive, Vids, etc.), Google Maps, Google Photos, Google Home, NotebookLM, and Google Chrome;

   iv. The Android Auto platform;

   v. Gemini and Google AI modes, models and platforms, including Gemini Fast, Thinking, and Pro; Bard, Meena, LaMDA 1st gen and 2nd gen, PaLM, PaLM 2; Gemini 1.0, 1.5, 2.0, 2.5, 3.0, and 3.1; Gemini 1.0 Nano, 1.5 Flash, 1.5 Flash-8B, 2.0 Flash, 2.0 Flash-Lite, 2.0 Flash (Experimental), 2.0 Flash Thinking (Experimental), 2.5 Flash, 2.5 Flash-Lite, 2.5 Flash Live, 2.5 Flash Native Audio, 3 Flash, 3 Flash (with higher thinking budget), 3.1 Flash Live, and 3.1 Flash-Lite; Gemini 1.0 Ultra, 1.0 Pro, 1.5 Pro, 1.5 Pro

with Deep Research, 1.5 Pro-002, Gemini-exp-1206, 2.0 Pro, 2.0 Pro (Experimental), 2.5 Pro, 2.5 Pro (Experimental), 3 Pro, and 3.1 Pro; Google AI Edge Eloquent; Gemini Deep Think, Gemini Live, Gemini for Android Auto, Gems, Vertex AI, Google AI Studio, Google Antigravity, Gemini API, Dialogflow/Conversational Agents, and Contact Center AI (CCAI) Platform;

c) Hardware offerings that run such software, including:

i. Google Home and Google Nest product lines, along with other Google and third-party smart speakers and smart displays;

ii. Pixel, Pixel XL, Pixel Pro, Pixel Pro XL, Pixel Fold, and Pixel Pro Fold smartphone product lines, along with other Google and third-party smartphones;

iii. Pixel Slate, Pixel Tablet, Pixelbook, and Pixelbook Go products lines, along with other Google and third-party tablets, laptops, and desktops;

iv. Pixel Watch and Fitbit product lines, along with other Google and third-party smartwatches;

v. Android TV, Chromecast with Google TV, and Google TV product lines, along with other Google and third-party streaming devices or smart TVs;

vi. Servers, TPUs, Google Cloud, Google Cloud Platform, and other cloud infrastructure; and

d) Any instrumentalities identified in the claim charts attached as exhibits to this Complaint that may not otherwise be listed above.[1]

5. The voice-based, natural language understanding and AI functionality within the Google AI Products that is accused of infringement (the "AI Functionality") constitutes a separate and distinct accused feature of Google's larger products and platforms. The AI Functionality—including Google Assistant, Gemini, Google voice search, and YouTube voice search—is implemented through specialized software components, including speech recognition engines, conversational language processors, natural language understanding models, and associated AI inference code (collectively, the "Specialized AI Software"). The Specialized AI Software is architecturally and functionally separable from other, unaccused, features and functions of Google's hardware devices, operating systems, and application software that do not practice the patented methods of the VoiceBox Patents. On information and belief, the Specialized AI Software exists as discrete modules, libraries, APIs, and services that Google develops, maintains, distributes, and updates separately from the unaccused aspects of its products. The Specialized AI Software is a component of, and constitutes a material part of, the patented inventions. When the AI Functionality is enabled or activated by a user—for example, by pressing a microphone button, issuing a "Hey Google" or "OK Google" wake command, or otherwise invoking Google Assistant, Gemini, or voice search—the Specialized AI Software performs the patented methods recited in the VoiceBox Patents. Any user's ability to disable, deactivate, or refrain from using the AI Functionality does not provide the Specialized AI Software with substantial non-infringing uses; rather, it is simply unaccused functionality.

[1] VoiceBox reserves the right to expand upon or otherwise modify the above list during this case and is in no way limiting the scope of the accused instrumentalities to what is currently listed.

6. VoiceBox has brought this case to hold Google accountable for its willful infringement of VoiceBox's patent rights. VoiceBox seeks all available relief under the patent laws of the United States, 35 U.S.C. §§ 100 et seq., and any other applicable laws for Google's infringement of the VoiceBox Patents.

**THE PARTIES**

7. VB Assets, LLC is a limited liability company organized under the laws of Delaware and has its principal place of business at 14725 NE 20th St Ste D PMB 202, Bellevue, WA 98007-3732.

8. On information and belief, Google LLC is a limited liability company organized and existing under the laws of Delaware. On information and belief, Google LLC is responsible for making, using, offering for sale, and/or importing Google AI Products as well as responsible for providing advertisements in response to voice queries. Google LLC has a registered agent to accept service of process within the State of Delaware located at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

9. On information and belief, YouTube, LLC is a limited liability company organized and existing under the laws of Delaware. On information and belief, YouTube, LLC is a subsidiary of Google LLC and is responsible for making, using, offering for sale, and/or importing Google AI Products, including by providing access to voice search and by providing advertisements in response to voice queries. YouTube, LLC has a registered agent to accept service of process within the State of Delaware located at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

10. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 100, et seq., including 35 U.S.C. § 271.

11. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States.

12. Personal jurisdiction over each Defendant is proper in this District based on one or more of the following: its presence in this judicial district; it has availed itself of the rights and benefits of the laws of Delaware; or it has derived substantial revenue from sales of Google AI Products in Delaware and it has systematic and continuous business contacts with Delaware. Each Defendant was incorporated in Delaware and/or formed under the laws of Delaware and Google designs Google AI Products, which are advertised, offered for sale, sold, and used in Delaware.

13. Venue is proper in this district under 28 U.S.C. § 1400(b). Each Defendant is incorporated in Delaware and/or formed under the laws of Delaware and therefore resides within this District.

## BACKGROUND

### A. VoiceBox Technologies Invents Groundbreaking Voice Technology

14. In 2001, three brothers, Mike, Rich, and Bob Kennewick founded VoiceBox Technologies to bring natural language understanding ("NLU") to a wide array of computer applications. They recognized that the typical computer speech-recognition systems forced human operators to adhere to a limited number of rigid speech prompts. These rigid prompts limited how systems were used and inhibited the widespread adoption of speech-recognition systems. The brothers believed that VoiceBox Technologies could become the first company to enable people to naturally and effectively interact with computer speech systems.

15. From its inception, VoiceBox Technologies engaged in intense research efforts to develop its NLU technology. As part of these efforts, VoiceBox Technologies achieved a significant milestone when it developed an early prototype called "Cybermind." As demonstrated on the King5 news, Cybermind was a voice-controlled speaker that could provide weather, recipes, sports scores, calendar updates, or play a song.[2]




**Figure 1: Cybermind Prototype**

16. VoiceBox Technologies' groundbreaking work did not go unrecognized. After learning about VoiceBox Technologies' technology, Toyota hired it to build a sophisticated NLU speech interface for its Lexus automobiles. VoiceBox Technologies built the voice and NLU capability for Toyota's award-winning Entune multimedia system.

17. As part of the development effort of an NLU interface for Lexus, VoiceBox Technologies demonstrated a personal assistant called "Alexus" that showcased the power of its Conversational Voice technology.

[2] https://www.youtube.com/watch?v=DDcRyPnvWhw.




**Figure 2: "Alexus" Demonstration**

18. Throughout its research and development efforts, VoiceBox Technologies realized that its technology could be deployed in a wide range of applications from connected home to mobile personal assistants.







**Figure 3: Connected Home** **Figure 4: Mobile**

19. By January 2012, VoiceBox Technologies was a leader in NLU and conversational voice technology. Leading companies throughout the world, including Toyota, Lexus, TomTom, Pioneer, Chrysler, Dodge, and Magellan used VoiceBox Technologies' award-winning and patented contextual speech technology. VoiceBox Technologies had software applications that ran

on smart speakers, in-car systems, smartphones, smart TVs, computers, tablets, e-readers, and personal navigation devices.

20. In 2013, the Institute of Electrical and Electronics Engineers (IEEE) ranked VoiceBox Technologies number 13 in patent power for the computer software industry.

Computer Software

| Rank | Company / Organization | Country of Headquarters | 2012 U.S. Patents | Pipeline Growth Index | Pipeline Impact | Self-Citations (%) | Adjusted Pipeline Impact | Pipeline Generality | Pipeline Originality | Pipeline Power |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Microsoft Corp. | United States | 2665 | 1.14 | 1.07 | 0.22 | 1.07 | 1.19 | 1.01 | 3909.67 |
| 2 | VMware Inc. | United States | 106 | 1.89 | 3.07 | 0.16 | 3.07 | 3.02 | 1.06 | 1966.63 |
| 3 | Citrix Systems Inc. | United States | 112 | 1.56 | 2.83 | 0.27 | 2.83 | 2.62 | 1.12 | 1441.86 |
| 4 | Symantec Corp. | United States | 379 | 1.34 | 1.54 | 0.16 | 1.54 | 1.63 | 1.01 | 1297.47 |
| 5 | Digimarc Corp. | United States | 94 | 0.9 | 5 | 0.88 | 2.08 | 4.8 | 1.12 | 944.96 |
| 6 | Oracle Corp. | United States | 913 | 0.92 | 1 | 0.12 | 1 | 1.13 | 0.98 | 930.36 |
| 7 | CommVault Systems Inc. | United States | 52 | 1.3 | 5 | 0.88 | 2.1 | 5 | 1.22 | 866.39 |
| 8 | Cadence Design Systems Inc. | United States | 158 | 1.15 | 2.45 | 0.15 | 2.45 | 1.76 | 0.89 | 699.87 |
| 9 | Adobe Systems Inc. | United States | 332 | 1.13 | 1.14 | 0.18 | 1.14 | 1.24 | 1 | 526.88 |
| 10 | Rovi Corp. | United States | 97 | 1.47 | 1.85 | 0.25 | 1.85 | 1.91 | 1.02 | 514.34 |
| 11 | TeleCommunication Systems Inc. | United States | 57 | 1.36 | 2.35 | 0.42 | 2.06 | 2.52 | 1.12 | 451.72 |
| 12 | SAP AG | Germany | 601 | 1.1 | 0.74 | 0.23 | 0.74 | 0.85 | 1.02 | 424.91 |
| **13** | **Voicebox Technologies Inc.** | **United States** | **11** | **1.83** | **5** | **0.65** | **3.26** | **5** | **1.29** | **423.56** |
| 14 | Sony Computer Entertainment Inc. | Japan | 220 | 1.33 | 1.1 | 0.36 | 1.03 | 1.26 | 1.08 | 409.7 |
| 15 | Bally Technologies Inc. | United States | 98 | 1.78 | 1.46 | 0.38 | 1.35 | 1.83 | 0.9 | 388.27 |
| 16 | Smith Micro Software Inc. | United States | 18 | 3 | 2.8 | 0.17 | 2.8 | 2.41 | 0.97 | 353.44 |
| 17 | McAfee Inc. | United States | 84 | 1.33 | 2.02 | 0.39 | 1.85 | 1.61 | 1.04 | 347.02 |
| 18 | Nuance Communications Inc. | United States | 160 | 1.15 | 1.19 | 0.3 | 1.19 | 1.56 | 1.02 | 345.99 |
| 19 | Synopsys Inc. | United States | 148 | 0.95 | 1.61 | 0.08 | 1.61 | 1.17 | 1.06 | 280.46 |
| 20 | Infosys Ltd. | India | 29 | 1.93 | 2.52 | 0.04 | 2.52 | 1.75 | 1.02 | 253.69 |

Source: IEEE Spectrum Patent Power 2013

21. VoiceBox Technologies had become a leader in conversational AI, including Voice Recognition, NLU, and AI services.[3]

22. As illustrated in the following company photograph, VoiceBox Technologies had invested in a large team of engineers, scientists, linguists, and other personnel—and was, at that time, optimistic about its technology and its future.

[3] *See* https://www.databricks.com/company/newsroom/press-releases/voicebox-accelerates-voice-recognition-innovations-with-databricks-unified-analytics-platform.



**B. The VoiceBox Patents**

23. The ’681 patent, entitled “SYSTEM AND METHOD FOR A COOPERATIVE CONVERSATIONAL VOICE USER INTERFACE,” was duly and legally issued on December 6, 2011, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors. Under 35 U.S.C. § 282, the ’681 patent is presumed valid. A true and correct copy of the ’681 patent is attached hereto as **Exhibit A**.

24. The ’681 patent claims, among other things, a method for providing a cooperative conversational voice user interface, comprising: receiving an utterance at a voice input device during a current conversation with a user, wherein the utterance includes one or more words that have different meanings in different contexts; accumulating short-term shared knowledge about the current conversation, wherein the short-term shared knowledge includes knowledge about the utterance received during the current conversation; accumulating long-term shared knowledge about the user, wherein the long-term shared knowledge includes knowledge about one or more past conversations with the user; determining an intended meaning for the utterance, wherein determining the intended meaning for the utterance includes: identifying, at a conversational speech engine, a context associated with the utterance from the short-term shared knowledge and the long-term shared knowledge; and establishing the intended meaning within the identified context, wherein the conversational speech engine establishes the intended meaning within the

identified context to disambiguate an intent that the user had in speaking the one or more words that have the different meanings in the different contexts; and generating a response to the utterance, wherein the conversational speech engine grammatically or syntactically adapts the response based on the intended meaning established within the identified context (claim 1).

25. VoiceBox is the assignee of the entire right, title, and interest in the ’681 patent.

26. The ’765 patent, entitled “SYSTEM AND METHOD FOR A COOPERATIVE CONVERSATIONAL VOICE USER INTERFACE,” was duly and legally issued on August 20, 2013, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors. Under 35 U.S.C. § 282, the ’765 patent is presumed valid. A true and correct copy of the ’765 patent is attached hereto as **Exhibit B**.

27. The ’765 patent claims, among other things, a method of providing a voice interface, comprising: receiving, at a speech engine, a natural language utterance from a voice-enabled device, the natural language utterance corresponding to a conversation type; determining the conversation type corresponding to the natural language utterance based on whether a user that spoke the natural language utterance has a leader role in an interaction with the voice-enabled device or has a supporter role in the interaction with the voice-enabled device; and generating a response to the natural language utterance with a format based on the conversation type, wherein the format is adapted to limit the user’s future input to interjecting queries or requests for clarification if the user has the supporter role (claim 1).

28. VoiceBox is the assignee of the entire right, title, and interest in the ’765 patent.

29. The ’249 patent, entitled “SYSTEM AND METHOD FOR A COOPERATIVE CONVERSATIONAL VOICE USER INTERFACE,” was duly and legally issued on May 21, 2019, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider

as the inventors. Under 35 U.S.C. § 282, the '249 patent is presumed valid. A true and correct copy of the '249 patent is attached hereto as **Exhibit C**.

30. The '249 patent claims, among other things, a computer-implemented method of facilitating natural language system responses using short-term knowledge generated based on one or more prior multi-modal device interactions, the method being implemented by a computer system that includes one or more physical processors executing one or more computer program instructions which, when executed, perform the method, the method comprising: receiving, by the computer system during a first conversation, a first voice input via a first input device, the first voice input comprising a first natural language utterance; receiving, by the computer system, a second voice input comprising the first natural language utterance via a second input device; comparing, by the computer system, the first voice input with the second voice input; filtering, by the computer system, sound from the first voice input and second voice input based on the comparison; obtaining, by the computer system during the first conversation, a user interface state related to one or more non-voice inputs associated with the first voice input, the one or more non-voice inputs comprising at least a first non-voice input; generating, by the computer system, the short-term knowledge based on at least the first voice input and the first non-voice input; determining, by the computer system, based on the short-term knowledge, a first context for the first natural language utterance; determining, by the computer system, based on the first context, an interpretation of the first natural language utterance; and generating, by the computer system, based on the interpretation of the first natural language utterance, a first response to the first natural language utterance (claim 1).

31. VoiceBox is the assignee of the entire right, title, and interest in the '249 patent.

32. The ’341 patent, entitled “SYSTEM AND METHOD FOR A COOPERATIVE CONVERSATIONAL VOICE USER INTERFACE,” was duly and legally issued on December 17, 2019, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors. Under 35 U.S.C. § 282, the ’341 patent is presumed valid. A true and correct copy of the ’341 patent is attached hereto as **Exhibit D**.

33. The ’341 patent claims, among other things, a computer-implemented method of facilitating natural language system responses utilizing accumulated short-term and long-term knowledge, the method being implemented by a computer system that includes one or more physical processors executing one or more computer program instructions which, when executed, perform the method, the method comprising: accumulating, by the computer system, short-term knowledge based on one or more natural language utterances received during a predetermined time period; expiring, by the computer system, one or more items of short-term knowledge that are based on one or more natural language utterances received prior to the predetermined time period; accumulating, by the computer system, long-term knowledge based on one or more natural language utterances received prior to the predetermined time period, wherein the long-term knowledge includes at least one of the one or more expired items of short-term knowledge; receiving, at the computer system, a first natural language utterance via an input device; determining, by the computer system, based on the short-term knowledge and the long-term knowledge, a first context for the first natural language utterance; determining, by the computer system, based on the first context, an interpretation of the first natural language utterance; and generating, by the computer system, a first response to the first natural language utterance based on the interpretation (claim 1).

34. VoiceBox is the assignee of the entire right, title, and interest in the ’341 patent.

35. The ’699 patent, entitled “SYSTEM AND METHOD FOR A COOPERATIVE CONVERSATIONAL VOICE USER INTERFACE,” was duly and legally issued on August 25, 2020, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors. Under 35 U.S.C. § 282, the ’699 patent is presumed valid. A true and correct copy of the ’699 patent is attached hereto as **Exhibit E**.

36. The ’699 patent claims, among other things, a computer-implemented method of generating natural language system responses adapted based on a user’s manner of speaking, the method being implemented by a computer system that includes one or more physical processors executing one or more computer program instructions which, when executed, perform the method, the method comprising: receiving, by the computer system, a user input comprising a natural language utterance; recognizing, by the computer system, one or more words or phrases from the natural language utterance; identifying, by the computer system, a context for the natural language utterance based on the one or more words or phrases recognized from the natural language utterance; determining, by the computer system, an interpretation of the natural language utterance based on the identified context; accumulating, by the computer system, short-term knowledge based on one or more natural language utterances received during a predetermined time period, wherein the one or more natural language utterances received during the predetermined time period are related to a single conversation between a user and the computer system; accumulating, by the computer system, long-term knowledge, wherein the long-term knowledge is accumulated based on one or more natural language utterances received prior to the predetermined time period; identifying, by the computer system, a manner in which the natural language utterance was spoken based on the short-term knowledge and the long-term knowledge; and generating, by the computer

system, a response to the natural language utterance based on the interpretation and the identified manner in which the natural language utterance was spoken (claim 1).

37. VoiceBox is the assignee of the entire right, title, and interest in the ’699 patent.

38. The ’176 patent, entitled “SYSTEM AND METHOD FOR SELECTING AND PRESENTING ADVERTISEMENTS BASED ON NATURAL LANGUAGE PROCESSING OF VOICE-BASED INPUT,” was duly and legally issued on October 19, 2010, and names Tom Freeman and Mike Kennewick as the inventors. Under 35 U.S.C. § 282, the ’176 patent is presumed valid. A true and correct copy of the ’176 patent is attached hereto as **Exhibit F**.

39. The ’176 patent claims, among other things, a method for selecting and presenting advertisements in response to processing natural language utterances, comprising: receiving a natural language utterance containing at least one request at an input device; recognizing one or more words or phrases in the natural language utterance at a speech recognition engine coupled to the input device, wherein recognizing the words or phrases in the natural language utterance includes: mapping a stream of phonemes contained in the natural language utterance to one or more syllables that are phonemically represented in an acoustic grammar; and generating a preliminary interpretation of the natural language utterance from the one or more syllables, wherein the preliminary interpretation generated from the one or more syllables includes the recognized words or phrases; interpreting the recognized words or phrases at a conversational language processor coupled to the speech recognition engine, wherein interpreting the recognized words or phrases includes establishing a context for the natural language utterance; selecting an advertisement in the context established for the natural language utterance; and presenting the selected advertisement via an output device coupled to the conversational language processor (claim 1).

40. VoiceBox is the assignee of the entire right, title, and interest in the ’176 patent.

41. The ’274 patent, entitled “SYSTEM AND METHOD FOR DELIVERING TARGETED ADVERTISEMENTS AND TRACKING ADVERTISEMENT INTERACTIONS IN VOICE RECOGNITION CONTEXTS,” was duly and legally issued on September 3, 2013, and names Tom Freeman and Mike Kennewick as the inventors. Under 35 U.S.C. § 282, the ’274 patent is presumed valid. A true and correct copy of the ’274 patent is attached hereto as **Exhibit G**.

42. The ’274 patent claims, among other things, a method to deliver targeted advertisements and track advertisement interactions in voice recognition contexts, comprising: receiving a natural language utterance from a voice-enabled device; processing the natural language utterance to identify one or more requests associated with the natural language utterance; determining that the natural language utterance contains a request that is incomplete or ambiguous; selecting one or more advertisements associated with the natural language utterance; outputting the one or more selected advertisements to the voice-enabled device; monitoring interaction between a user and the one or more selected advertisements; and interpreting the request that is incomplete or ambiguous based on the interaction (claim 1).

43. VoiceBox is the assignee of the entire right, title, and interest in the ’274 patent.

44. The ’536 patent, entitled “SYSTEM AND METHOD FOR DELIVERING TARGETED ADVERTISEMENTS AND TRACKING ADVERTISEMENT INTERACTIONS IN VOICE RECOGNITION CONTEXTS,” was duly and legally issued on November 11, 2014, and names Tom Freeman and Mike Kenn[e]wick[4] as the inventors. Under 35 U.S.C. § 282, the

[4] The ’536 patent names “Mike Kennwick” as one of the inventors. *See* Exhibit H at 1. This is a typographical error, as the inventor’s name is properly spelled Mike Kennewick.

’536 patent is presumed valid. A true and correct copy of the ’536 patent is attached hereto as **Exhibit H**.

45. The ’536 patent claims, among other things, a computer-implemented method of providing promotional content related to one or more natural language utterances and/or responses, the method being implemented by a computer system that includes one or more physical processors executing one or more computer program instructions which, when executed, perform the method, the method comprising: receiving, at the one or more physical processors, a first natural language utterance; providing, at the one or more physical processors, a response to the first natural language utterance; receiving, at the one or more physical processors, a second natural language utterance relating to the first natural language utterance; identifying, at the one or more physical processors, requests associated with the second natural language utterance, wherein the requests include a first request to be processed by a first device associated with a user and a second request to be processed by a second device associated with the user; determining, at the one or more physical processors, promotional content that relates to one or more of the first request or the second request; and presenting, at the one or more physical processors, the promotional content to the user (claim 44).

46. VoiceBox is the assignee of the entire right, title, and interest in the ’536 patent.

47. The ’097 patent, entitled “SYSTEM AND METHOD FOR DELIVERING TARGETED ADVERTISEMENTS AND/OR PROVIDING NATURAL LANGUAGE PROCESSING BASED ON ADVERTISEMENTS,” was duly and legally issued on February 23, 2016, and names Tom Freeman and Mike Kennewick as the inventors. Under 35 U.S.C. § 282, the ’097 patent is presumed valid. A true and correct copy of the ’097 patent is attached hereto as **Exhibit I**.

48. The ’097 patent claims, among other things, a method for providing natural language processing based on advertisements, the method being implemented on a computer system having one or more physical processors executing computer program instruction which, when executed, perform the method, the method comprising: providing, by the computer system, an advertisement associated with a product or service for presentation to a user; receiving, at the computer system, a natural language utterance of the user; and interpreting, by the computer system, the natural language utterance based on the advertisement and, responsive to the existence of a pronoun in the natural language utterance, determining whether the pronoun refers to one or more of the product or service or a provider of the product or service (claim 1).

49. VoiceBox is the assignee of the entire right, title, and interest in the ’097 patent.

50. The ’456 patent, entitled “SYSTEM AND METHOD FOR DELIVERING TARGETED ADVERTISEMENTS AND/OR PROVIDING NATURAL LANGUAGE PROCESSING BASED ON ADVERTISEMENTS,” was duly and legally issued on February 25, 2025, and names Tom Freeman and Mike Kennewick as the inventors. Under 35 U.S.C. § 282, the ’456 patent is presumed valid. A true and correct copy of the ’456 patent is attached hereto as **Exhibit J**.

51. The ’456 patent claims, among other things, a method for processing voice-based natural language utterances that include requests and selecting and presenting purchase opportunities based thereon, the method being implemented by one or more physical processors programmed with computer program instructions, which when executed cause the one or more physical processors to perform the method, the method comprising: providing, by the one or more processors, a first natural language utterance from a user as an input to a speech recognition engine; receiving, by the one or more processors, words and/or phrases recognized from the first natural

language utterance, as an output of the speech recognition engine; determining, by the one or more processors, a context for the natural language utterance based on at least the recognized words and/or phrases; selecting, by the one or more processors, a purchase opportunity for the user related to the first natural language utterance based on selection criteria, the selection criteria comprising the determined context; delivering, by the one or more physical processors, the selected purchase opportunity to the user via communication to an electronic device of the user; tracking over time, by the one or more processors, the user's interaction with the selected purchase opportunity after its delivery to the electronic device, the tracked interaction including input received by the electronic device from the user interacting with, or completing a transaction related to, the purchase opportunity; building or updating, by the one or more processors, a user-specific profile for the user based on the tracked interaction of the user with the selected purchase opportunity; interpreting, by the one or more processors, a subsequent second natural language utterance from the user using at least the built or updated user-specific profile including the tracked interaction of the user with the selected purchase opportunity; and selecting, by the one or more processors, a subsequent second purchase opportunity for the user related to the second natural language utterance based on second selection criteria comprising the interpreted content of the second natural language utterance (claim 1).

52. VoiceBox is the assignee of the entire right, title, and interest in the '456 patent.

53. The '385 patent, entitled "VOICE COMMERCE," was duly and legally issued on August 10, 2021, and names Michael R. Kennewick, Sr. as the inventor. Under 35 U.S.C. § 282, the '385 patent is presumed valid. A true and correct copy of the '385 patent is attached hereto as **Exhibit K**.

54. The ’385 patent claims, among other things, a method for providing voice commerce, the method being implemented on a computer system having one or more physical processors programmed with computer program instructions which, when executed, perform the method, the method comprising: receiving, by the computer system, a single first user input comprising a natural language utterance; providing, by the computer system, the natural language utterance as an input to a speech recognition engine; obtaining, by the computer system, one or more words or phrases recognized from the natural language utterance as an output of the speech recognition engine; searching, by the computer system, one or more databases of products or services based on the one or more words or phrases; selecting, by the computer system, without further user input other than the single first user input, a product or service from the database to be purchased based on the search; receiving, by the computer system, a second user input indicating confirmation by a user to complete a purchase transaction of the selected product or service; and completing, by the computer system, without further user input after the receipt of the second user input, a purchase transaction of the selected product or service (claim 1).

55. VoiceBox is the assignee of the entire right, title, and interest in the ’385 patent.

**C. Google’s Knowledge of VoiceBox’s Patented Technology and Google’s Infringement**

56. VoiceBox Technologies approached Google about collaborating on an NLU product in 2007. At that time, VoiceBox Technologies was known in the industry as an early innovator in voice-based AI technology and had licensed its technology to some of the most sophisticated companies in the automotive and consumer electronics industries.

57. VoiceBox Technologies personally met with Mike Cohen, Google’s Head of Speech, in 2007 to demonstrate how its NLU product worked. VoiceBox Technologies met with

Mr. Cohen again, along with two of his lead speech engineers, a Google product manager, Google's maps marketing manager, and an individual in Google's business development team to discuss ways to integrate VoiceBox Technologies' NLU technology into Google's products.

58. From 2008 through 2009, Google publicly emphasized the importance of developing voice recognition technology to its overall business.

59. In 2010, VoiceBox Technologies began corresponding with Steve Woods, Google's Senior Director of Engineering, to explore market opportunities to deliver natural language voice applications for Google's voice technology. In this correspondence, VoiceBox Technologies provided an executive summary of its technology, along with a detailed description of its product's architecture and patent portfolio. The executive summary listed VoiceBox Technologies' issued and pending patents, including the pending patent application for the '681 patent, which is the first patent in the Cooperative Conversations family and the pending application for the '176 patent, which is the first patent in the Voice Ads family. The later issued patents in the Cooperative Conversations and Voice Ads families share the same or nearly identical written descriptions as the pending applications disclosed to Google.

60. Around the same time, Apple launched its voice assistant product, Siri. Recognizing the opportunity, VoiceBox Technologies offered to help Google deliver a competitive product and gain an edge over Apple using VoiceBox Technologies' technology.

61. In 2011, VoiceBox Technologies began corresponding with Mr. Cohen again, hoping to find a way to partner on speech applications. Shortly afterward, executives from VoiceBox Technologies met personally with Mr. Cohen to discuss a collaboration involving the VoiceBox Patents and Google's products and services. Later that year, VoiceBox Technologies spoke with Mr. Woods, who put VoiceBox Technologies in contact with another Director of

Engineering at Google, Dave Burke, who was leading the charge on a project that was designed to "go directly at Siri." A few days later, an executive at VoiceBox Technologies had dinner with Mr. Woods, who confirmed that Google was "throwing significant resources to chase Siri." During this meeting, Mr. Woods expressed interest in VoiceBox Technologies' patents and also discussed Google's products and services as it relates to those patents.

62. VoiceBox Technologies again expressed an interest in collaborating to create a voice assistant product, and emphasized that it had "multiple patents covering intent recognition in speech, context specific agents in a personal assistant and voice advertising." Mr. Burke responded by requesting a demonstration of VoiceBox Technologies' technology, which VoiceBox Technologies provided while again emphasizing that it had patents covering this technology.

63. Also in 2011, Google announced Google voice search and began rolling out a microphone button in various Google products that allowed users to speak voice queries to Google. This feature came first to the Chrome browser and then over the next two years Google added it to Android and desktop versions of Google products.

64. In July 2012, having heard nothing further from Google, VoiceBox Technologies again reached out to Mr. Woods, this time to inform him that VoiceBox Technologies had been approached by two companies who were interested in acquiring VoiceBox Technologies' intellectual property and to see if Google would be interested in a strategic dialog. In this correspondence, VoiceBox Technologies provided another presentation with an overview of how its technology worked. Mr. Woods eventually forwarded this correspondence to Google's head of Corporate Development, David Lawee.

65. In August of 2012, Joe Brennan, a patent attorney at Google, reached out to VoiceBox Technologies asking for "a document that lists Voicebox patents and pending patent applications" specifically so he could review them. VoiceBox Technologies provided a list that included patents and patent applications in the Cooperative Conversations family and the Voice Ads family. From the Cooperative Conversations family, the list included the '681 patent and U.S. Pat. App. Pub. No. US 2012/0022857, which eventually matured into the '765 patent. From the Voice Ads family, the list included the '176 patent, and U.S. Pat. App. Pub. No. US 2012/0150636, which eventually matured into the '274 patent. A VoiceBox executive met with Mr. Brennan in August and October of 2012 to discuss VoiceBox Technologies' patents and Google's products and services. Later that month, however, Google told VoiceBox Technologies it decided to pass on the opportunity to partner, only to launch Google Assistant, one of the accused products, a few years later in 2016. On information and belief, around August of 2012, Google reviewed at least the '681 patent, the published application for the '765 patent, the '176 patent, and the published application for the '274 patent because Google was evaluating a transaction with VoiceBox Technologies involving the VoiceBox Patents.

66. Around 22 months after Google released Google Assistant, on March 2, 2018, VoiceBox notified Google of the VoiceBox Patents again and the voice-driven technologies coming on the marketplace, referring to products and services from Google and its competitors. Around this time, VoiceBox acquired the VoiceBox Patents by way of an assignment from VoiceBox Technologies. VoiceBox contacted Google through a patent broker, who sent Google's Patent Counsel Stephanie Goeller an email attaching a list of the patents in VoiceBox's patent portfolio. The portfolio included three families: the Cooperative Conversations family; the Voice Ads family; and the Voice Commerce family.

67. The March 2, 2018 notice listed the ’681 patent and the ’765 patent from the Cooperative Conversations patent family. The notice also listed the published application (U.S. Pat. Pub. No. 2015/0228276 A1) for the ’249 patent. While the applications for the ’341 patent and the ’699 patent had not been filed at the time of the notice, both of these patents claim priority through the patents and application in the notice back to the ’681 patent, and include the same or nearly identical written descriptions as the other issued patents in the Cooperative Conversations family.

68. The March 2, 2018 notice also listed the ’176 patent, the ’274 patent, the ’536 patent, and the ’097 patent from the Voice Ads patent family. While the application for the ’456 patent had not been filed at the time of the notice, the ’456 patent claims priority through the patents in the notice back to the ’176 patent, and includes the same or nearly identical written description as the other issued patents in the Voice Ads family.

69. The March 2, 2018 notice also listed U.S. Pat. No. 9,626,703 from the Voice Commerce patent family. While the application for ’385 patent had not been filed at the time of the notice, the ’385 patent claims priority through the patents in the notice back to the ’703 patent, and includes the same or nearly identical written description as the other issued patents in the Voice Commerce family.

70. In response to the notice, Ms. Goeller indicated that she would consult with her colleagues within Google about the patent notice provided by VoiceBox, which identified the patents and applications mentioned above and voice-driven technologies coming on the marketplace, referring to products and services from Google and its competitors. Ms. Goeller did not provide VoiceBox with any noninfringement or invalidity defenses but instead indicated that Google believed VoiceBox’s asking price was too high. On information and belief, around March

of 2018, Google reviewed at least the ’681 patent, the ’765 patent, the ’176 patent, the ’274 patent, the ’536 patent, and the ’097 patent and the Google products and services those patents infringe because Google was evaluating the patents and its own products and services in relation to a transaction with VoiceBox involving the VoiceBox Patents.

71. On May 18, 2018, VoiceBox’s patent broker emailed Ms. Goeller about Google Assistant and the Cooperative Conversations patent family. The email included a link to a video of a presentation by Google’s CEO Sundar Pichai at Google’s 2018 annual developer conference called Google I/O 2018.[5] In the video, Mr. Pichai discussed new capabilities for Google Assistant, including Google Duplex, Continued Conversations, Multiple Actions, and other voice-related and natural language processing features.[6] Referring to the video, VoiceBox’s patent broker wrote “this sure sounds a lot like ‘cooperative conversations’ from here. No wonder the VoiceBox family covering these [i.e. Google’s] kinds of conversational models is so highly cited (Lead patent has 191 total comprising Apple, Amazon, Google . . .). See a bit more below; complete families attached.” VoiceBox’s patent broker further explained that the VoiceBox Patents were “substantive, strategically valuable portfolios and assets that implicate major revenue streams,” referring to Google’s revenue streams from its products and services infringing on the VoiceBox Patents.

72. On June 8, 2018, VoiceBox’s patent broker emailed Ms. Goeller again. This email identified the Cooperative Conversations family, including the ’681 patent and the ’765 patent. VoiceBox’s patent broker included the text of a news story about Walmart’s conversational voice commerce that powers its Jetblack conversational commerce shopping service and referenced

---

[5] A current link to the video is found at https://www.youtube.com/watch?v=ogfYd705cRs (accessed July 21, 2026).
[6] https://blog.google/innovation-and-ai/technology/developers-tools/all-io18-announcements/.

Google's "strategic partnership with Walmart." On information and belief, the patent broker was referring to a partnership between Google and Walmart from around August of 2017 to enable Walmart shopping through Google Assistant and Google Express. Around that time, Google announced that it was "entering an exciting partnership with Walmart" to let users buy Walmart products "through voice with your Assistant on Google Home or on the Google Express website or app," with account-linking for personalized shopping results based on Walmart purchase history.[7] On information and belief, based on this email from VoiceBox's patent broker and the similarity between the patents and the technology Google announced, Google understood, or was at least willfully blind to the fact, that the voice advertising and voice shopping capabilities of its partnership with Walmart infringed not just the'681 patent and the '765 patent from the Cooperative Conversations family, but also the '176 patent, the '274 patent, the '536 patent, and the '097 patent from the Voice Ads family.

73. Google never obtained a license and continued to provide both its Google voice search feature and Google Assistant platform.

74. Additionally, on information and belief, Google was working on its next generation AI-powered chatbots with knowledge of the VoiceBox Patents and its infringement of those patents. From around January of 2020 to early 2023, Google unveiled multiple AI-powered chatbots, including Meena, LaMDA, and PaLM. Then around February of 2023 Google announced Bard, a conversational AI-powered chatbot based on Meena, LaMDA, and PaLM. Around February of 2024, Google rebranded Bard as Google Gemini. On information and belief, Google knew that each of these products and services infringed the VoiceBox Patents.

---

[7] https://blog.google/products-and-platforms/products/assistant/shop-walmart-and-more-your-favorite-stores-faster/.

75. Google never obtained a license to use the VoiceBox Patents in Google Gemini or any of the AI-powered chatbots Gemini was based on.

76. On information and belief, Google continued to monitor and analyze the VoiceBox Patents and their patent families after VoiceBox Technologies notified Google around 2012 up through and after when VoiceBox notified Google around 2018. For example, Google's continued monitoring and analysis of the Asserted Patents is demonstrated by Google's repeated disclosure of the Asserted Patents to the United States Patent and Trademark office as prior art to Google's patent applications. On information and belief, Google further conducted due diligence of VoiceBox's patents and applications and Google's products and services to determine whether the patents cover Google's products and services. On information and belief, Google's due diligence revealed that Google's products and services infringed VoiceBox's patents.

77. The '681 patent or its published application was cited during prosecution of one or more patents assigned to Google LLC or its predecessor Google Inc., including U.S. Patent Nos. 8,296,142; 8,352,245; 9,412,365; 9,842,592; 9,978,367; 10,134,394; 10,255,921; 10,268,680; 10,311,860; 10,832,664; and 11,416,214. The '681 patent's published application was cited during prosecution of one or more patents assigned to Google LLC or its predecessor Google Inc. no later than April 13, 2012, when it was cited during prosecution of Google Inc.'s U.S. Patent No. 8,296,142. The '681 patent was cited during prosecution of one or more patents assigned to Google LLC or its predecessor Google Inc. no later than March 9, 2017, the date it was cited during prosecution of Google LLC's U.S. Patent No. 10,311,860.

78. The '765 patent or its published application was cited during prosecution of one or more patents assigned to Google LLC or its predecessor Google Inc., including U.S. Patent Nos. 10,341,272 and 10,691,702. The '765 patent was cited during prosecution of one or more patents

assigned to Google LLC or its predecessor Google Inc. no later than May 5, 2017, when it was cited during prosecution of Google Inc.'s U.S. Patent No. 10,341,272. The '765 patent's published application was cited during prosecution of one or more patents assigned to Google LLC or its predecessor Google Inc. no later than October 3, 2019, when it was cited during prosecution of Google LLC's U.S. Patent No. 10,691,702.

79. The '249 patent issued on May 21, 2019 claiming priority to both the '681 patent and the '765 patent. By this time VoiceBox had notified Google of both the '681 patent and the '765 patent, and Google had cited both the '681 patent and the '765 patent during prosecution of Google's own patents. On information and belief, Google learned of the '249 patent shortly after the '249 patent issued because Google was monitoring the Cooperative Conversations patent family.

80. The '341 patent issued on December 17, 2019 claiming priority to both the '681 patent and the '765 patent. By this time VoiceBox had notified Google of both the '681 patent and the '765 patent, and Google had cited both the '681 patent and the '765 patent during prosecution of Google's own patents. On information and belief, Google learned of the '341 patent shortly after the '341 patent issued because Google was monitoring the Cooperative Conversations patent family.

81. The '699 patent issued on August 25, 2020 claiming priority to both the '681 patent and the '765 patent. By this time VoiceBox had notified Google of both the '681 patent and the '765 patent, and Google had cited both the '681 patent and the '765 patent during prosecution of Google's own patents. On information and belief, Google learned of the '699 patent shortly after the '699 patent issued because Google was monitoring the Cooperative Conversations patent family.

82. The ’176 patent or its published application was cited during prosecution of one or more patents or patent applications assigned to Google LLC or its predecessor Google Inc., including U.S. Patent Nos. 9,275,411; 9,378,191; 9,471,551; 9,865,260; 10,636,418; 10,691,702; 10,742,435; and 10,802,671, as well as U.S. Patent Pub. No. 2011/0271194 A1. The ’176 patent was cited during prosecution of one or more patents or applications assigned to Google LLC or its predecessor Google Inc. no later than October 23, 2012, the date it was cited during prosecution of Google Inc.’s U.S. Patent Pub. No. 2011/0271194 A1. The ’176 patent’s published application was cited during prosecution of one or more patents assigned to Google LLC or its predecessor Google Inc. no later than May 14, 2014, the date it was cited during prosecution of Google Inc.’s U.S. Patent No. 9,275,411.

83. The ’274 patent or its published application was cited during prosecution of one or more patents assigned to Google LLC or its predecessor Google Inc., including U.S. Patent Nos. 9,666,187 and 10,055,767. The ’274 patent’s published application was cited during prosecution of one or more patents assigned to Google LLC or its predecessor Google Inc. no later than July 25, 2013, when it was cited during prosecution of Google Inc.’s U.S. Patent No. 9,666,187. The ’274 patent was cited during prosecution of one or more patents assigned to Google LLC or its predecessor Google Inc. no later than May 13, 2015, when it was cited during prosecution of Google LLC’s U.S. Patent No. 10,055,767.

84. The ’536 patent issued on November 11, 2014 claiming priority to both the ’176 patent and the ’274 patent. By this time VoiceBox Technologies had notified Google of the ’176 patent and the published application for the ’274 patent, and Google had cited the ’176 patent and the published application for the ’274 patent during prosecution of Google’s own patents. On

information and belief, Google learned of the ’536 patent shortly after the ’536 patent issued because Google was monitoring the Voice Ads patent family.

85. The ’097 patent issued on February 23, 2016 claiming priority to both the ’176 patent and the ’274 patent. By this time VoiceBox Technologies had notified Google of the ’176 patent and the published application for the ’274 patent, and Google had cited the ’176 patent and the ’274 patent during prosecution of Google’s own patents. On information and belief, Google learned of the ’097 patent shortly after the ’097 patent issued because Google was monitoring the Voice Ads patent family.

86. The ’456 patent issued on February 25, 2025 claiming priority to the ’176 patent, the ’274 patent, the ’536 patent, and the ’097 patent. By this time VoiceBox had notified Google of the ’176 patent, the ’274 patent, the ’536 patent, and the ’097 patent, and Google had cited the ’176 patent and the ’274 patent during prosecution of Google’s own patents. On information and belief, Google learned of the ’456 patent shortly after the ’456 patent issued because Google was monitoring the Voice Ads patent family.

87. The ’385 patent issued on August 10, 2021 claiming priority to U.S. Patent No. 9,626,703. By this time, VoiceBox had notified Google of U.S. Patent No. 9,626,703. On information and belief, Google learned of the ’385 patent shortly after the ’385 patent issued because Google was monitoring the Voice Commerce patent family.

88. After VoiceBox Technologies and VoiceBox disclosed the VoiceBox Patents and Google’s infringement of those patents to Google multiple times, Google affirmatively chose not to obtain a license.

89. On information and belief, Google rolled out its Google voice search feature around the time it learned of the earliest VoiceBox Patents and Google’s infringement of those patents.

Despite learning of at least the ’681 patent and ’176 patent and Google’s infringement during this rollout, Google did not obtain a license to the VoiceBox Patents or stop the rollout of Google voice search.

90. Additionally, Google continued to offer its Google voice search after receiving notice of the ’681 patent, the ’765 patent, the ’176 patent, the ’274 patent, the ’536 patent, and the ’097 patent and Google’s infringement in March and June of 2018.

91. On information and belief, Google developed its Google Assistant platform in light of the knowledge it gained from its specific review of the VoiceBox Patents. Google was made aware of at least the ’681 patent and the ’176 patent at least as early as 2012 and at least three years before Google released Google Assistant.

92. Additionally, Google continued to offer Google Assistant after receiving notice of the ’681 patent, the ’765 patent, the ’176 patent, the ’274 patent, the ’536 patent, and the ’097 patent and Google’s infringement in March and June of 2018.

93. On information and belief, Google developed Meena, LaMDA, PaLM, Bard, and Gemini in light of the knowledge it gained from its specific review of the VoiceBox Patents. Google was made aware of at least the ’681 patent, the ’765 patent, the ’176 patent, the ’274 patent, the ’536 patent, and the ’097 patent and Google’s infringement in March and June of 2018 and at least a year before Google released Meena, the earliest AI-chatbot in the string of chatbots leading to Gemini.

**COUNT 1: INFRINGEMENT OF THE ’681 PATENT**

94. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

95. Google, on its own, by conduct attributable to Google, by conduct for which Google is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the ’681 patent by performing all steps of the patented methods in the ’681 patent using Google AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Google AI Products can be found in **Exhibit L-1 (681 – Google Assistant) and Exhibit L-2 (681 – Gemini)**.[8] VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

96. To the extent any steps of the ’681 patent’s methods are deemed performed by another party, such as end users on end user devices, Google directs or controls such performance because Google: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Google conditions users’ participation in voice interactions with Google AI Products and receipt of the benefits of Google AI Products upon users performing claimed method step(s) because, for example, Google designed its software so that user devices must receive utterances from users in order for Google’s software to perform the remaining steps of the methods and provide a response to the user. Google establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Google and Google is liable for direct infringement of the ’681 patent.

97. On information and belief, Google knew of or was willfully blind to the existence of the ’681 patent by in or around August 2012. By that time, the ’681 patent had already issued

[8] All references in Exhibit titles to specific Google AI Products, e.g. Google Assistant, Google Voice Search, YouTube, and Gemini, are for convenience only and are not limiting.

and VoiceBox Technologies notified Google of the ’681 patent in discussions where Google was evaluating a transaction with VoiceBox Technologies involving the ’681 patent. Alternatively or additionally, on information and belief, Google knew of or was willfully blind to the existence of the ’681 patent no later than around June 2018. By that time, VoiceBox notified Google of the ’681 patent in discussions where Google was evaluating a purchase of the ’681 patent and its family members. On information and belief, in or around August 2012, or at least no later than June 2018, Google knew that the Google AI Products perform every step of the patented methods in the ’681 patent, that Google directly infringes the ’681 patent, and that its actions would induce and contribute to infringement by Google AI Product users. Alternatively or additionally, on information and belief, Google was at least willfully blind to the facts that the Google AI Products perform every step of the patented methods in the ’681 patent, that Google directly infringes the ’681 patent, and that its actions would induce and contribute to infringement by Google AI Product users because: (1) Google subjectively believed that there was a high probability these facts existed because Google was investigating and analyzing the ’681 patent and its family members for a license or purchase transaction; and (2) Google took deliberate action to avoid learning of these facts.

98. Alternatively or additionally, Google has had actual notice that Google, its end users, or some combination of the foregoing infringe the ’681 patent with Google AI Products at least as of April 17, 2026, when Google was served with the original Complaint.

99. Google has been and is inducing infringement of the ’681 patent by actively and knowingly inducing others, such as end users, to use Google AI Products to perform the method steps of the inventions claimed in the ’681 patent in violation of 35 U.S.C. § 271(b). On information and belief, Google knew of or was willfully blind to the ’681 patent and the fact that

the foregoing induced acts constitute patent infringement. On information and belief, Google wrote software for Google AI Products and designed Google AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Google caused Google AI Products to be made available through its own website and third-party sellers. Google profits from its own sales and those of third parties who sell Google AI Products. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Google AI Products.

100. Google instructs and encourages users of the Google AI Products to infringe the ’681 patent. For example, Google instructs and encourages users to operate the Google AI Products such that the products provide a cooperative conversational voice user interface. As shown below, Google’s support page entitled ‘Get started with the Google Assistant on Pixel’ instructs users to interact with Google AI Products using conversational voice commands.[9]

[9] https://support.google.com/assistant/answer/9475056.

## Talk to your new Google Assistant

1. Use your voice or phone:
   - **Voice:** Say "Hey Google" or "Ok Google."
   - **Squeeze:** On Pixel 2 to 4, squeeze the bottom half of your phone. Learn how to squeeze your phone.
   - **Press:** On Pixel 6 and later, including Fold, press and hold the **Power** button.
2. Ask a question or say a command. For example, you can say "What's the weather today?" or "Set a timer for 10 minutes."
3. Listen to the answer.

**Tip:** If you have a Pixel 4 or later, including Fold, that runs Android 12 and up, and want to talk to Assistant with the Power button, open device **Settings** > **System** > **Gestures** > **Press and hold power button**. Learn how to check your Android version.

## Continue the conversation

**Important**: This feature is only available in English (US, Canada, UK, Ireland, Australia, and Singapore).

1. On your phone, say "Hey Google" and ask your question or say a command.
2. Listen to the answer.
3. To continue the conversation, ask another question or say a command.

Learn how to have a conversation with Google Assistant.

### What you can ask

Take pictures, open apps, change your settings, and get answers. For example:

- "Turn on Bluetooth."
- "Take a screenshot."
- "Take a selfie."
- "Go to John Legend on Twitter."
- "Help me speak Spanish."
- "Start a voice recording."
- "Search Wikipedia for Henry VIII."

https://support.google.com/assistant/answer/9475056.

101. As another example, the Google Store overview page for the Google Home Speakers instructs users to interact with Google AI Products using conversational voice commands.[10]




https://store.google.com/product/google_home_speaker?hl=en-US.

102. As another example, Google's blog post entitled '3 tips to make Google Assistant your own' encourages users to set up Voice Match and use personalized routines that accumulate short-term and long-term shared knowledge.[11]

---

[10] https://store.google.com/product/google_home_speaker?hl=en-US.
[11] https://blog.google/products-and-platforms/products/assistant/how-to-personalize-google-assistant/.

## 2. Set up Voice Match for easy recognition

Voice Match allows Assistant to recognize your voice, which is especially helpful for shared devices at home. It also enables "Hey Google" on your phone so Assistant can verify it's you. To get started, navigate to Assistant settings on your phone or say "Hey Google, set up Voice Match" on Assistant-enabled devices like earbuds and smart displays. Your Voice Match profile is stored only on the devices where you've turned it on, but it may be sent temporarily to Google servers so Assistant can recognize you.

## 3. Get personal results

Once you set up Voice Match, Assistant can share more personal results and responses. For example, it can notify you about upcoming events on your Google Calendar and play music from your favorite streaming service. Here are some other Assistant commands I use that you can set up and try yourself:

- Hey Google, play my summer playlist
- Hey Google, call Mom
- Hey Google, take me home
- Hey Google, show me my reminders

Google Assistant can be your own personal helper, so try out these tips today and make it yours!

https://blog.google/products-and-platforms/products/assistant/how-to-personalize-google-assistant/.

103. Google has been and is contributorily infringing the '681 patent by selling or offering to sell the Specialized AI Software for Google AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the '681 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Google's Specialized AI Software is a material part of the patented invention.

The attached claim charts include exemplary methods executed by the Specialized AI Software. On information and belief, Google wrote and updated the Specialized AI Software for Google AI Products and designed the user interface for Google AI Products to operate in an infringing manner, including after Google learned of the patent. Google causes the Specialized AI Software for Google AI Products to be made available through its own website and services, as well as through third-party sellers. On information and belief, Google also profits from its own sales and those of third parties who sell Google AI Products with the Specialized AI Software designed and coded by Google to infringe. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Google AI Products.

104. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the ’681 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Google’s products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of smartphones, tablets, smart speakers, smart displays, automobiles, and other devices that incorporate Google Assistant or Gemini through Google’s APIs and SDKs. The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Google and third-party hardware devices and other software—including, without limitation, the telephony, texting, web browsing, camera, media playback, and other general computing functions of devices such as Pixel smartphones, Google Home and Nest devices, and Chromebooks.

105. On information and belief, Google knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the ’681 patent because, when activated, it performs the patented methods—namely, receiving natural language utterances, determining intended meaning using short-term and long-term shared knowledge, and generating grammatically or syntactically adapted responses. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Pixel smartphones or Google Nest devices—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

106. Google’s infringement has been, and continues to be knowing, intentional, and willful. On information and belief, Google has known of the existence of the ’681 patent, and its acts of infringement have been and are willful and in disregard for the ’681 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

107. VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the ’681 patent to the extent that any patented article is subject to a duty to mark.

108. Google’s acts of infringement of the ’681 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

109. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT 2: INFRINGEMENT OF THE '765 PATENT

110. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

111. Google, on its own, by conduct attributable to Google, by conduct for which Google is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '765 patent by performing all steps of the patented methods in the '765 patent using Google AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Google AI Products can be found in **Exhibit M-1 (765 – Google Assistant), Exhibit M-2 (765 – Google Voice Search), and Exhibit M-3 (765 – Gemini)**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

112. To the extent any steps of the '765 patent's methods are deemed performed by another party, such as end users on end user devices, Google directs or controls such performance because Google: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Google conditions users' participation in voice interactions with Google AI Products and receipt of the benefits of Google AI Products upon users performing claimed method step(s) because, for example, Google designed its software so that user devices must receive utterances from users in order for Google's software to perform the remaining steps of the methods and provide a response to the user. Google establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides,

and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Google and Google is liable for direct infringement of the ’765 patent.

113. On information and belief, Google knew of or was willfully blind to the existence of the ’765 patent by in or around June 2018. By that time, the ’765 patent had already issued and VoiceBox notified Google of the ’765 patent in discussions where Google was evaluating a purchase of the ’765 patent and its family members. On information and belief, in or around June 2018, Google knew that the Google AI Products perform every step of the patented methods in the ’765 patent, that Google directly infringes the ’765 patent, and that its actions would induce and contribute to infringement by Google AI Product users. Alternatively or additionally, on information and belief, Google was at least willfully blind to the facts that the Google AI Products perform every step of the patented methods in the ’765 patent, that Google directly infringes the ’765 patent, and that its actions would induce and contribute to infringement by Google AI Product users because: (1) Google subjectively believed that there was a high probability these facts existed because Google was investigating and analyzing the ’765 patent and its family members for a license or purchase transaction; and (2) Google took deliberate action to avoid learning of these facts.

114. Alternatively or additionally, Google has had actual notice that Google, its end users, or some combination of the foregoing infringe the ’765 patent with Google AI Products at least as of April 17, 2026, when Google was served with the original Complaint.

115. Google has been and is inducing infringement of the ’765 patent by actively and knowingly inducing others, such as end users, to use Google AI Products to perform the method steps of the inventions claimed in the ’765 patent in violation of 35 U.S.C. § 271(b). On information and belief, Google knew of or was willfully blind to the ’765 patent and the fact that

the foregoing induced acts constitute patent infringement. On information and belief, Google wrote software for Google AI Products and designed Google AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Google caused Google AI Products to be made available through its own website and third-party sellers. Google profits from its own sales and those of third parties who sell Google AI Products. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Google AI Products.

116. Google instructs and encourages users of the Google AI Products to infringe the ’765 patent. For example, Google instructs and encourages users to operate the Google AI Products such that the products receive, at a speech engine, a natural language utterance from a voice-enabled device, the natural language utterance corresponding to a conversation type. Google’s support page entitled ‘Get started with the Google Assistant on Pixel’ instructs users to provide voice inputs to the Google AI Products.[12]

[12] https://support.google.com/assistant/answer/9475056.

## Talk to your new Google Assistant

1. Use your voice or phone:
   - **Voice:** Say "Hey Google" or "Ok Google."
   - **Squeeze:** On Pixel 2 to 4, squeeze the bottom half of your phone. Learn how to squeeze your phone.
   - **Press:** On Pixel 6 and later, including Fold, press and hold the **Power** button.
2. Ask a question or say a command. For example, you can say "What's the weather today?" or "Set a timer for 10 minutes."
3. Listen to the answer.

**Tip:** If you have a Pixel 4 or later, including Fold, that runs Android 12 and up, and want to talk to Assistant with the Power button, open device **Settings** > **System** > **Gestures** > **Press and hold power button**. Learn how to check your Android version.

## Continue the conversation

**Important**: This feature is only available in English (US, Canada, UK, Ireland, Australia, and Singapore).

1. On your phone, say "Hey Google" and ask your question or say a command.
2. Listen to the answer.
3. To continue the conversation, ask another question or say a command.

Learn how to have a conversation with Google Assistant.

### What you can ask

Take pictures, open apps, change your settings, and get answers. For example:

- "Turn on Bluetooth."
- "Take a screenshot."
- "Take a selfie."
- "Go to John Legend on Twitter."
- "Help me speak Spanish."
- "Start a voice recording."
- "Search Wikipedia for Henry VIII."

https://support.google.com/assistant/answer/9475056.

117. As another example, Google's support page entitled 'Automate daily routines & tasks with Google Assistant' encourages users to create Routines that trigger multiple automated actions in response to a single voice command.[13]

> # Automate daily routines & tasks with Google Assistant
>
> When you create Routines, you and members of your home can get help from Google Assistant with tasks throughout the day. Say a command or perform an action on a supported device and Google Assistant can automatically do multiple actions.
>
> For example, you can create:
>
> - A personal Routine that starts when you say, "Hey Google, good morning," Google Assistant turns on your compatible smart lights, tells you about the weather, lists your calendar events for the day, and plays news.
> - A household Routine where Google Home turns on your connected porch light and sets the thermostat to 75°F everyday at sunset.
> - A household Routine that starts when anyone turns on the living room TV, and then Google Assistant performs a custom command, like "Turn on the amplifier."

https://support.google.com/assistant/answer/7672035.

118. As another example, Google's blog post entitled 'Bringing you the next-generation Google Assistant' encourages users to make multiple requests in a row using Continued Conversation.[14]

> Running on-device, the next generation Assistant can process and understand your requests as you make them, and deliver the answers up to 10 times faster. You can multitask across apps—so creating a calendar invite, finding and sharing a photo with your friends, or dictating an email is faster than ever before. And with Continued Conversation, you can make several requests in a row without having to say "Hey Google" each time.

---

[13] https://support.google.com/assistant/answer/7672035.
[14] https://blog.google/products-and-platforms/products/assistant/next-generation-google-assistant-io/.

https://blog.google/products-and-platforms/products/assistant/next-generation-google-assistant-io/.

119. Google has been and is contributorily infringing the ’765 patent by selling or offering to sell the Specialized AI Software for Google AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the ’765 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Google’s Specialized AI Software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the Specialized AI Software. On information and belief, Google wrote and updated the Specialized AI Software for Google AI Products and designed the user interface for Google AI Products to operate in an infringing manner, including after Google learned of the patent. Google causes the Specialized AI Software for Google AI Products to be made available through its own website and services, as well as through third-party sellers. On information and belief, Google also profits from its own sales and those of third parties who sell Google AI Products with the Specialized AI Software designed and coded by Google to infringe. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Google AI Products.

120. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the ’765 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Google’s products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a

component of smartphones, tablets, smart speakers, smart displays, automobiles, and other devices that incorporate Google Assistant or Gemini through Google's APIs and SDKs. The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Google and third-party hardware devices and other software—including, without limitation, the telephony, texting, web browsing, camera, media playback, and other general computing functions of devices such as Pixel smartphones, Google Home and Nest devices, and Chromebooks.

121. On information and belief, Google knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the '765 patent because, when activated, it performs the patented methods—namely, receiving natural language utterances, determining conversation types, and generating responses formatted based on conversation type. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Pixel smartphones or Google Nest devices—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

122. Google's infringement has been, and continues to be knowing, intentional, and willful. On information and belief, Google has known of the existence of the '765 patent, and its acts of infringement have been and are willful and in disregard for the '765 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

123. VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the ’765 patent to the extent that any patented article is subject to a duty to mark.

124. Google’s acts of infringement of the ’765 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

125. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys’ fees pursuant to 35 U.S.C. § 285.

**COUNT 3: INFRINGEMENT OF THE ’249 PATENT**

126. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

127. Google, on its own, by conduct attributable to Google, by conduct for which Google is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the ’249 patent by performing all steps of the patented methods in the ’249 patent using Google AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Google AI Products can be found in **Exhibit N-1 (249 – Google Assistant)**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

128. To the extent any steps of the ’249 patent’s methods are deemed performed by another party, such as end users on end user devices, Google directs or controls such performance because Google: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Google conditions users’ participation in voice interactions with Google AI Products

and receipt of the benefits of Google AI Products upon users performing claimed method step(s) because, for example, Google designed its software so that user devices must receive utterances from users in order for Google's software to perform the remaining steps of the methods and provide a response to the user. Google establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Google and Google is liable for direct infringement of the '249 patent.

129. Google has actual notice that Google, its end users, or some combination of the foregoing infringe the '249 patent with Google AI Products at least as of April 17, 2026, when Google was served with the original Complaint.

130. Google has been and is inducing infringement of the '249 patent by actively and knowingly inducing others, such as end users, to use Google AI Products to perform the method steps of the inventions claimed in the '249 patent in violation of 35 U.S.C. § 271(b). On information and belief, Google knows of or is willfully blind to the '249 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Google wrote software for Google AI Products and designed Google AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Google caused Google AI Products to be made available through its own website and third-party sellers. Google profits from its own sales and those of third parties who sell Google AI Products. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Google AI Products.

131. Google instructs and encourages users of the Google AI Products to infringe the '249 patent. For example, Google instructs and encourages users to operate the Google AI Products

such that the products facilitate natural language system responses using short-term knowledge generated based on one or more prior multi-modal device interactions. Google's support page entitled 'Multiple devices respond to Hey Google' instructs users to interact with Google AI Products across multiple devices.[15]

## Multiple devices respond to "Hey Google"

If you say "Hey Google" near two or more devices, such as your Google Nest or Home device and your Pixel Tablet or phone, multiple devices might turn on. Only one of the devices should respond.

Google selects the best device to respond to based on various factors, such as:

- Proximity of the device
- Type of request
- Capabilities of the device

https://support.google.com/assistant/answer/7257763.

132. As another example, Google's blog post entitled '3 tips to make Google Assistant your own' encourages users to set up Voice Match across multiple devices.[16]

## 2. Set up Voice Match for easy recognition

Voice Match allows Assistant to recognize your voice, which is especially helpful for shared devices at home. It also enables "Hey Google" on your phone so Assistant can verify it's you. To get started, navigate to Assistant settings on your phone or say "Hey Google, set up Voice Match" on Assistant-enabled devices like earbuds and smart displays. Your Voice Match profile is stored only on the devices where you've turned it on, but it may be sent temporarily to Google servers so Assistant can recognize you.

https://blog.google/products-and-platforms/products/assistant/how-to-personalize-google-assistant/.

---

[15] https://support.google.com/assistant/answer/7257763.
[16] https://blog.google/products-and-platforms/products/assistant/how-to-personalize-google-assistant/.

133. As another example, Google's blog post entitled 'Loud and clear: AI is improving Assistant conversations' encourages users to ask follow-up questions across devices, demonstrating multi-modal context accumulation.[17]

## More natural conversations

We also applied BERT to further improve the quality of your conversations. Google Assistant uses your previous interactions and understands what's currently being displayed on your smartphone or smart display to respond to any follow-up questions, letting you have a more natural, back-and-forth conversation.

https://blog.google/products-and-platforms/products/assistant/loud-and-clear-ai-improving-assistant-conversations/.

134. Google has been and is contributorily infringing the '249 patent by selling or offering to sell the Specialized AI Software for Google AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the '249 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Google's Specialized AI Software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the Specialized AI Software. On information and belief, Google wrote and updated the Specialized AI Software for Google AI Products and designed the user interface for Google AI Products to operate in an infringing manner, including after Google learned of the patent. Google causes the Specialized AI Software for Google AI Products to be made available through its own website and services, as well as through third-party sellers. On information and belief, Google also profits from its own sales and those of third parties who sell Google AI Products with the Specialized AI Software designed and

[17] https://blog.google/products-and-platforms/products/assistant/loud-and-clear-ai-improving-assistant-conversations/.

coded by Google to infringe. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Google AI Products.

135. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the ’249 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Google’s products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of smartphones, tablets, smart speakers, smart displays, automobiles, and other devices that incorporate Google Assistant or Gemini through Google’s APIs and SDKs. The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Google and third-party hardware devices and other software—including, without limitation, the telephony, texting, web browsing, camera, media playback, and other general computing functions of devices such as Pixel smartphones, Google Home and Nest devices, and Chromebooks.

136. On information and belief, Google knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the ’249 patent because its sole function, when activated, is to perform the patented methods—namely, receiving voice inputs, generating short-term knowledge based on multi-modal device interactions, and generating context-based responses to natural language utterances. The Specialized AI Software has no substantial non-infringing uses when considered

on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Pixel smartphones or Google Nest devices—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

137. Google's infringement has been, and continues to be, knowing, intentional, and willful. On information and belief, Google has known of the existence of the '249 patent, and its acts of infringement have been and are willful and in disregard for the '249 patent, without any reasonable basis for believing that it has a right to engage in the infringing conduct.

138. VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '249 patent to the extent that any patented article is subject to a duty to mark.

139. Google's acts of infringement of the '249 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

140. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT 4: INFRINGEMENT OF THE '341 PATENT**

141. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

142. Google, on its own, by conduct attributable to Google, by conduct for which Google is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '341 patent by performing all steps of the patented methods in the '341 patent using Google

AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Google AI Products can be found in **Exhibit O-1 (341 – Google Assistant)**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

143. To the extent any steps of the '341 patent's methods are deemed performed by another party, such as end users on end user devices, Google directs or controls such performance because Google: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Google conditions users' participation in voice interactions with Google AI Products and receipt of the benefits of Google AI Products upon users performing claimed method step(s) because, for example, Google designed its software so that user devices must receive utterances from users in order for Google's software to perform the remaining steps of the methods and provide a response to the user. Google establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Google and Google is liable for direct infringement of the '341 patent.

144. Google has actual notice that Google, its end users, or some combination of the foregoing infringe the '341 patent with Google AI Products at least as of April 17, 2026, when Google was served with the original Complaint.

145. Google has been and is inducing infringement of the '341 patent by actively and knowingly inducing others, such as end users, to use Google AI Products to perform the method steps of the inventions claimed in the '341 patent in violation of 35 U.S.C. § 271(b). On information and belief, Google knows of or is willfully blind to the '341 patent and the fact that

the foregoing induced acts constitute patent infringement. On information and belief, Google wrote software for Google AI Products and designed Google AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Google caused Google AI Products to be made available through its own website and third-party sellers. Google profits from its own sales and those of third parties who sell Google AI Products. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Google AI Products.

146. Google instructs and encourages users of the Google AI Products to infringe the ’341 patent. For example, Google instructs and encourages users to operate the Google AI Products such that the products facilitate natural language system responses utilizing accumulated short-term and long-term knowledge. Google’s support page entitled ‘Have a conversation with Google Assistant’ instructs users to ask follow-up questions using Continued Conversation, which accumulates short-term knowledge during the conversation.[18]

## Turn on Continued Conversation

**Important:** Continued Conversation only applies to your current device. Learn about conversations on speaker or Smart Display.

1. Say "Hey Google, open Assistant settings."
2. Under "All settings" tap **Continued Conversation**.
3. Turn on **Continued Conversation**.

## Have a conversation

1. On your phone, say "Hey Google" and ask your question or say a command.
2. Listen to the answer.
3. To continue the conversation, ask another question or say a command.

**Tip:** Assistant glows at the bottom of your screen while it listens.

[18] https://support.google.com/pixelphone/answer/10004407.

https://support.google.com/pixelphone/answer/10004407.

147. As another example, Google's blog post entitled 'Bringing you the next-generation Google Assistant' encourages users to use Personal References that accumulate long-term knowledge about the user.[19]

> ## A more personal Assistant
>
> For a digital assistant to be helpful, it needs to understand the people, places and events that are important to you. In the coming months, the Assistant will be able to better understand references to all of these through Personal References. For example, after you've told the Assistant which contact is "mom," you'll be able to ask for things more naturally like, "What's the weather like at mom's house this weekend?" or, "Remind me to order flowers a week before my sister's birthday." You always have control over your personal information, and can add, edit or remove details from the "You" tab in Assistant settings at any time.
>
> As the Assistant understands you better, it can also offer more useful suggestions. Later this summer on Smart Displays, a new feature called "Picks for you" will provide personalized suggestions starting with recipes, events and podcasts. So if you've searched for Mediterranean recipes in the past, the Assistant may show you Mediterranean dishes when you ask for dinner recommendations. The Assistant also takes contextual cues, like the time of day, into account when you're asking for help, giving you breakfast recipes in the morning and dinner at night.

https://blog.google/products-and-platforms/products/assistant/next-generation-google-assistant-io/.

148. As another example, Google's blog post entitled 'Reference past chats for more tailored help with Gemini Advanced' instructs users to allow Gemini to reference past chats for more personalized responses, demonstrating accumulated long-term knowledge.[20]

[19] https://blog.google/products-and-platforms/products/assistant/next-generation-google-assistant-io/.
[20] https://blog.google/feed/gemini-referencing-past-chats/.

> Starting today, Gemini can now recall your past chats to provide more helpful responses. Whether you're asking a question about something you've already discussed, or asking Gemini to summarize a previous conversation, Gemini now uses information from relevant chats to craft a response.
>
> That means no more starting over from scratch or having to search for a previous conversation thread. Plus, you can build on top of previous conversations or projects you've already started.

https://blog.google/feed/gemini-referencing-past-chats/.

149. Google has been and is contributorily infringing the '341 patent by selling or offering to sell the Specialized AI Software for Google AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the '341 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Google's Specialized AI Software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the Specialized AI Software. On information and belief, Google wrote and updated the Specialized AI Software for Google AI Products and designed the user interface for Google AI Products to operate in an infringing manner, including after Google learned of the patent. Google causes the Specialized AI Software for Google AI Products to be made available through its own website and services, as well as through third-party sellers. On information and belief, Google also profits from its own sales and those of third parties who sell Google AI Products with the Specialized AI Software designed and coded by Google to infringe. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Google AI Products.

150. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the ’341 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Google’s products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of smartphones, tablets, smart speakers, smart displays, automobiles, and other devices that incorporate Google Assistant or Gemini through Google’s APIs and SDKs. The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Google and third-party hardware devices and other software—including, without limitation, the telephony, texting, web browsing, camera, media playback, and other general computing functions of devices such as Pixel smartphones, Google Home and Nest devices, and Chromebooks.

151. On information and belief, Google knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the ’341 patent because its sole function, when activated, is to perform the patented methods—namely, accumulating short-term and long-term knowledge from natural language utterances and generating context-based responses. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Pixel

smartphones or Google Nest devices—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

152. Google's infringement has been, and continues to be, knowing, intentional, and willful. On information and belief, Google has known of the existence of the '341 patent, and its acts of infringement have been and are willful and in disregard for the '341 patent, without any reasonable basis for believing that it has a right to engage in the infringing conduct.

153. VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '341 patent to the extent that any patented article is subject to a duty to mark.

154. Google's acts of infringement of the '341 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

155. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT 5: INFRINGEMENT OF THE '699 PATENT**

156. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

157. Google, on its own, by conduct attributable to Google, by conduct for which Google is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '699 patent by performing all steps of the patented methods in the '699 patent using Google AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Google AI Products can be found in **Exhibit P-1 (699 – Google**

**Assistant)**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

158. To the extent any steps of the ’699 patent’s methods are deemed performed by another party, such as end users on end user devices, Google directs or controls such performance because Google: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Google conditions users’ participation in voice interactions with Google AI Products and receipt of the benefits of Google AI Products upon users performing claimed method step(s) because, for example, Google designed its software so that user devices must receive utterances from users in order for Google’s software to perform the remaining steps of the methods and provide a response to the user. Google establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Google and Google is liable for direct infringement of the ’699 patent.

159. Google has actual notice that Google, its end users, or some combination of the foregoing infringe the ’699 patent with Google AI Products at least as of April 17, 2026, when Google was served with the original Complaint.

160. Google has been and is inducing infringement of the ’699 patent by actively and knowingly inducing others, such as end users, to use Google AI Products to perform the method steps of the inventions claimed in the ’699 patent in violation of 35 U.S.C. § 271(b). On information and belief, Google knows of or is willfully blind to the ’699 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Google wrote software for Google AI Products and designed Google AI Products to operate in an infringing

manner, and instructs and markets to users to infringe the patent. Google caused Google AI Products to be made available through its own website and third-party sellers. Google profits from its own sales and those of third parties who sell Google AI Products. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Google AI Products.

161. Google instructs and encourages users of the Google AI Products to infringe the ’699 patent. For example, Google instructs and encourages users to operate the Google AI Products such that the products receive a user input comprising a natural language utterance and determine a context for the utterance. Google’s support page entitled ‘Get started with the Google Assistant on Pixel’ instructs users to provide voice commands to Google AI Products.[21]

[21] https://support.google.com/assistant/answer/9475056.

## Talk to your new Google Assistant

1. Use your voice or phone:
   - **Voice:** Say "Hey Google" or "Ok Google."
   - **Squeeze:** On Pixel 2 to 4, squeeze the bottom half of your phone. Learn how to squeeze your phone.
   - **Press:** On Pixel 6 and later, including Fold, press and hold the **Power** button.
2. Ask a question or say a command. For example, you can say "What's the weather today?" or "Set a timer for 10 minutes."
3. Listen to the answer.

**Tip:** If you have a Pixel 4 or later, including Fold, that runs Android 12 and up, and want to talk to Assistant with the Power button, open device **Settings** > **System** > **Gestures** > **Press and hold power button**. Learn how to check your Android version.

## Continue the conversation

**Important**: This feature is only available in English (US, Canada, UK, Ireland, Australia, and Singapore).

1. On your phone, say "Hey Google" and ask your question or say a command.
2. Listen to the answer.
3. To continue the conversation, ask another question or say a command.

Learn how to have a conversation with Google Assistant.

### What you can ask

Take pictures, open apps, change your settings, and get answers. For example:

- "Turn on Bluetooth."
- "Take a screenshot."
- "Take a selfie."
- "Go to John Legend on Twitter."
- "Help me speak Spanish."
- "Start a voice recording."
- "Search Wikipedia for Henry VIII."

Get more examples of what you can ask.

https://support.google.com/assistant/answer/9475056.

162. As another example, Google's blog post entitled 'Loud and clear: AI is improving Assistant conversations' encourages users to ask contextual follow-up questions, explaining that 'context matters and Assistant needs to be flexible enough to understand what you're referring to when you ask for help.'[22]

> **A good conversation is all about context**
>
> Assistant's timers are a popular tool, and plenty of us set more than one of them at the same time. Maybe you've got a 10-minute timer for dinner going at the same time as another to remind the kids to start their homework in 20 minutes. You might fumble and stop mid sentence to correct how long the timer should be set for, or maybe you don't use the exact same phrase to cancel it as you did to create it. Like in any conversation, context matters and Assistant needs to be flexible enough to understand what you're referring to when you ask for help.

https://blog.google/products-and-platforms/products/assistant/loud-and-clear-ai-improving-assistant-conversations/.

163. As another example, Google's support page entitled 'How Google Assistant works with your data' instructs users on how Google AI Products use contextual information from linked devices and services to understand and respond to utterances.[23]

> **How Assistant understands and responds to you**
>
> Assistant uses what you say, and info from your linked devices and services, to understand and respond to you. It also uses this info for other purposes stated in Google's Privacy Policy, such as improvements to Google services (including technologies to help reduce unintended activations for everyone). Examples of information from your linked devices and services include:

https://support.google.com/assistant/answer/11091015.

---

[22] https://blog.google/products-and-platforms/products/assistant/loud-and-clear-ai-improving-assistant-conversations/.
[23] https://support.google.com/assistant/answer/11091015.

164. Google has been and is contributorily infringing the ’699 patent by selling or offering to sell the Specialized AI Software for Google AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the ’699 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Google’s Specialized AI Software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the Specialized AI Software. On information and belief, Google wrote and updated the Specialized AI Software for Google AI Products and designed the user interface for Google AI Products to operate in an infringing manner, including after Google learned of the patent. Google causes the Specialized AI Software for Google AI Products to be made available through its own website and services, as well as through third-party sellers. On information and belief, Google also profits from its own sales and those of third parties who sell Google AI Products with the Specialized AI Software designed and coded by Google to infringe. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Google AI Products.

165. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the ’699 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Google’s products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of smartphones, tablets, smart speakers, smart displays, automobiles, and other devices

that incorporate Google Assistant or Gemini through Google's APIs and SDKs. The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Google and third-party hardware devices and other software—including, without limitation, the telephony, texting, web browsing, camera, media playback, and other general computing functions of devices such as Pixel smartphones, Google Home and Nest devices, and Chromebooks.

166. On information and belief, Google knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the '699 patent because its sole function, when activated, is to perform the patented methods—namely, receiving natural language utterances, identifying user manner of speaking based on accumulated knowledge, and generating adapted responses. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Pixel smartphones or Google Nest devices—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

167. Google's infringement has been, and continues to be, knowing, intentional, and willful. On information and belief, Google has known of the existence of the '699 patent, and its acts of infringement have been and are willful and in disregard for the '699 patent, without any reasonable basis for believing that it has a right to engage in the infringing conduct.

168. VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '699 patent to the extent that any patented article is subject to a duty to mark.

169. Google's acts of infringement of the '699 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

170. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT 6: INFRINGEMENT OF THE '176 PATENT**

171. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

172. Google, on its own, by conduct attributable to Google, by conduct for which Google is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '176 patent by performing all steps of the patented methods in the '176 patent using Google AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Google AI Products can be found in **Exhibit Q-1 (176 – Google Assistant), Exhibit Q-2 (176 – Google Voice Search), Exhibit Q-3 (176 – YouTube), and Exhibit Q-4 (176 – Gemini)**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

173. To the extent any steps of the '176 patent's methods are deemed performed by another party, such as end users on end user devices, Google directs or controls such performance because Google: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Google conditions users' participation in voice interactions with Google AI Products and receipt of the benefits of Google AI Products upon users performing claimed method step(s) because, for example, Google designed its software so that user devices must receive utterances

from users in order for Google's software to perform the remaining steps of the methods and provide a response to the user. Google establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Google and Google is liable for direct infringement of the '176 patent.

174. On information and belief, Google knew of or was willfully blind to the existence of the '176 patent by in or around August 2012. By that time, the '176 patent had already issued and VoiceBox Technologies notified Google of the '176 patent in discussions where Google was evaluating a transaction with VoiceBox Technologies involving the '176 patent. Alternatively or additionally, on information and belief, Google knew of or was willfully blind to the existence of the '176 patent no later than around June 2018. By that time, VoiceBox notified Google of the '176 patent in discussions where Google was evaluating a purchase of the '176 patent and its family members. On information and belief, in or around August 2012, or at least no later than June 2018, Google knew that the Google AI Products perform every step of the patented methods in the '176 patent, that Google directly infringes the '176 patent, and that its actions would induce and contribute to infringement by Google AI Product users. Alternatively or additionally, on information and belief, Google was at least willfully blind to the facts that the Google AI Products perform every step of the patented methods in the '176 patent, that Google directly infringes the '176 patent, and that its actions would induce and contribute to infringement by Google AI Product users because: (1) Google subjectively believed that there was a high probability these facts existed because Google was investigating and analyzing the '176 patent and its family members for a license or purchase transaction; and (2) Google took deliberate action to avoid learning of these facts.

175. Alternatively or additionally, Google has had actual notice that Google, its end users, or some combination of the foregoing infringe the ’176 patent with Google AI Products at least as of April 17, 2026, when Google was served with the original Complaint.

176. Google has been and is inducing infringement of the ’176 patent by actively and knowingly inducing others, such as end users, to use Google AI Products to perform the method steps of the inventions claimed in the ’176 patent in violation of 35 U.S.C. § 271(b). On information and belief, Google knew of or was willfully blind to the ’176 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Google wrote software for Google AI Products and designed Google AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Google caused Google AI Products to be made available through its own website and third-party sellers. Google profits from its own sales and those of third parties who sell Google AI Products. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Google AI Products.

177. Google instructs and encourages users of the Google AI Products to infringe the ’176 patent. For example, Google instructs and encourages users to operate the Google AI Products such that the products select and present advertisements in response to processing natural language utterances. Google’s blog post entitled ‘New types of answers from your Google Assistant on Android’ encourages users to ask voice queries that trigger contextual content and sponsored results.[24]

---

[24] https://blog.google/products-and-platforms/products/assistant/new-types-of-answers-your-google-assistant-on-android/.

> For some questions, the most helpful response might be showing you links to a variety of sources from across the web to learn more. In these cases, you'll see the full set of search results from the web. When relevant, these results may include the existing ads that you'd see on Search today.

https://blog.google/products-and-platforms/products/assistant/new-types-of-answers-your-google-assistant-on-android/.

178. As another example, Google's blog post entitled 'Shop with AI Mode, use AI to buy and try clothes on yourself virtually' encourages users to describe products using natural language and receive targeted advertisements and purchase opportunities in response.[25]




https://blog.google/products-and-platforms/products/shopping/google-shopping-ai-mode-virtual-try-on-update/.

---

[25] https://blog.google/products-and-platforms/products/shopping/google-shopping-ai-mode-virtual-try-on-update/.

179. Google has been and is contributorily infringing the ’176 patent by selling or offering to sell the Specialized AI Software for Google AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the ’176 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Google’s Specialized AI Software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the Specialized AI Software. On information and belief, Google wrote and updated the Specialized AI Software for Google AI Products and designed the user interface for Google AI Products to operate in an infringing manner, including after Google learned of the patent. Google causes the Specialized AI Software for Google AI Products to be made available through its own website and services, as well as through third-party sellers. On information and belief, Google also profits from its own sales and those of third parties who sell Google AI Products with the Specialized AI Software designed and coded by Google to infringe. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Google AI Products.

180. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the ’176 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Google’s products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of smartphones, tablets, smart speakers, smart displays, automobiles, and other devices

that incorporate Google Assistant or Gemini through Google's APIs and SDKs. The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Google and third-party hardware devices and other software—including, without limitation, the telephony, texting, web browsing, camera, media playback, and other general computing functions of devices such as Pixel smartphones, Google Home and Nest devices, and Chromebooks.

181. On information and belief, Google knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the '176 patent because its sole function, when activated, is to perform the patented methods—namely, receiving natural language utterances, establishing context, and selecting and presenting advertisements in the established context. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Pixel smartphones or Google Nest devices—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

182. Google's infringement has been, and continues to be knowing, intentional, and willful. On information and belief, Google has known of the existence of the '176 patent, and its acts of infringement have been and are willful and in disregard for the '176 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

183. VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '176 patent to the extent that any patented article is subject to a duty to mark.

184. Google's acts of infringement of the '176 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

185. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT 7: INFRINGEMENT OF THE '274 PATENT**

186. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

187. Google, on its own, by conduct attributable to Google, by conduct for which Google is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '274 patent by performing all steps of the patented methods in the '274 patent using Google AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Google AI Products can be found in **Exhibit R-1 (274 – Google Assistant) and Exhibit R-2 (274 – Gemini)**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

188. To the extent any steps of the '274 patent's methods are deemed performed by another party, such as end users on end user devices, Google directs or controls such performance because Google: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Google conditions users' participation in voice interactions with Google AI Products and receipt of the benefits of Google AI Products upon users performing claimed method step(s) because, for example, Google designed its software so that user devices must receive utterances from users in order for Google's software to perform the remaining steps of the methods and

provide a response to the user. Google establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Google and Google is liable for direct infringement of the ’274 patent.

189. On information and belief, Google knew of or was willfully blind to the existence of the ’274 patent by in or around June 2018. By that time, the ’274 patent had already issued and VoiceBox notified Google of the ’274 patent in discussions where Google was evaluating a purchase of the ’274 patent and its family members. On information and belief, in or around June 2018, Google knew that the Google AI Products perform every step of the patented methods in the ’274 patent, that Google directly infringes the ’274 patent, and that its actions would induce and contribute to infringement by Google AI Product users. Alternatively or additionally, on information and belief, Google was at least willfully blind to the facts that the Google AI Products perform every step of the patented methods in the ’274 patent, that Google directly infringes the ’274 patent, and that its actions would induce and contribute to infringement by Google AI Product users because: (1) Google subjectively believed that there was a high probability these facts existed because Google was investigating and analyzing the ’274 patent and its family members for a license or purchase transaction; and (2) Google took deliberate action to avoid learning of these facts.

190. Alternatively or additionally, Google has had actual notice that Google, its end users, or some combination of the foregoing infringe the ’274 patent with Google AI Products at least as of April 17, 2026, when Google was served with the original Complaint.

191. Google has been and is inducing infringement of the ’274 patent by actively and knowingly inducing others, such as end users, to use Google AI Products to perform the method

steps of the inventions claimed in the '274 patent in violation of 35 U.S.C. § 271(b). On information and belief, Google knew of or was willfully blind to the '274 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Google wrote software for Google AI Products and designed Google AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Google caused Google AI Products to be made available through its own website and third-party sellers. Google profits from its own sales and those of third parties who sell Google AI Products. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Google AI Products.

192. Google instructs and encourages users of the Google AI Products to infringe the '274 patent. For example, Google instructs and encourages users to operate the Google AI Products such that the products deliver targeted advertisements and track advertisement interactions in voice recognition contexts. Google's blog post entitled 'Let AI do the hard parts of your holiday shopping' encourages users to use voice-based shopping features, describing how users can 'go from brainstorming to browsing right within your chat' and interact with targeted product advertisements.[26]

[26] https://blog.google/products-and-platforms/products/shopping/agentic-checkout-holiday-ai-shopping/.

## Simplify your holiday shopping with Gemini

You can also now use shopping features right in the Gemini app, helping you go from brainstorming to browsing right within your chat. Whether you're searching for ideas of what to look for on Black Friday or making a holiday list on a budget, the Gemini app can now move beyond simple text suggestions and offer helpful shopping ideas, powered by Shopping Graph information you can trust. You can find shoppable product listings, comparison tables, prices from across the web and places to buy right in the Gemini app. This is available to all Gemini users in the U.S. starting today — simply ask a shopping-related question to get started.

https://blog.google/products-and-platforms/products/shopping/agentic-checkout-holiday-ai-shopping/.

193. As another example, Google's support page entitled 'Get help with your shopping in Gemini Apps' instructs users to use Gemini as a 'personal AI-powered shopping assistant' that delivers targeted product recommendations and tracks user interactions with those recommendations.[27]

## Get help with your shopping in Gemini Apps

You can use Gemini Apps as your personal AI-powered shopping assistant. Gemini uses information from Google's Shopping Graph to help you find products, compare options, and make purchase decisions.

https://support.google.com/gemini/answer/16730149.

194. Google has been and is contributorily infringing the '274 patent by selling or offering to sell the Specialized AI Software for Google AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the '274 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of

[27] https://support.google.com/gemini/answer/16730149.

35 U.S.C. § 271(c). Google's Specialized AI Software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the Specialized AI Software. On information and belief, Google wrote and updated the Specialized AI Software for Google AI Products and designed the user interface for Google AI Products to operate in an infringing manner, including after Google learned of the patent. Google causes the Specialized AI Software for Google AI Products to be made available through its own website and services, as well as through third-party sellers. On information and belief, Google also profits from its own sales and those of third parties who sell Google AI Products with the Specialized AI Software designed and coded by Google to infringe. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Google AI Products.

195. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the '274 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Google's products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of smartphones, tablets, smart speakers, smart displays, automobiles, and other devices that incorporate Google Assistant or Gemini through Google's APIs and SDKs. The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Google and third-party hardware devices and other software—including, without limitation, the telephony,

texting, web browsing, camera, media playback, and other general computing functions of devices such as Pixel smartphones, Google Home and Nest devices, and Chromebooks.

196. On information and belief, Google knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the ’274 patent because its sole function, when activated, is to perform the patented methods—namely, receiving natural language utterances, processing them to identify requests, selecting advertisements, and interpreting incomplete or ambiguous requests based on advertisement interaction. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Pixel smartphones or Google Nest devices—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

197. Google’s infringement has been, and continues to be knowing, intentional, and willful. On information and belief, Google has known of the existence of the ’274 patent, and its acts of infringement have been and are willful and in disregard for the ’274 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

198. VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the ’274 patent to the extent that any patented article is subject to a duty to mark.

199. Google's acts of infringement of the '274 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

200. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT 8: INFRINGEMENT OF THE '536 PATENT**

201. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

202. Google, on its own, by conduct attributable to Google, by conduct for which Google is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '536 patent by performing all steps of the patented methods in the '536 patent using Google AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Google AI Products can be found in **Exhibit S-1 (536 – Google Assistant)**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

203. To the extent any steps of the '536 patent's methods are deemed performed by another party, such as end users on end user devices, Google directs or controls such performance because Google: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Google conditions users' participation in voice interactions with Google AI Products and receipt of the benefits of Google AI Products upon users performing claimed method step(s) because, for example, Google designed its software so that user devices must receive utterances from users in order for Google's software to perform the remaining steps of the methods and

provide a response to the user. Google establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Google and Google is liable for direct infringement of the ’536 patent.

204. On information and belief, Google knew of or was willfully blind to the existence of the ’536 patent by in or around June 2018. By that time, the ’536 patent had already issued and VoiceBox notified Google of the ’536 patent in discussions where Google was evaluating a purchase of the ’536 patent and its family members. On information and belief, in or around June 2018, Google knew that the Google AI Products perform every step of the patented methods in the ’536 patent, that Google directly infringes the ’536 patent, and that its actions would induce and contribute to infringement by Google AI Product users. Alternatively or additionally, on information and belief, Google was at least willfully blind to the facts that the Google AI Products perform every step of the patented methods in the ’536 patent, that Google directly infringes the ’536 patent, and that its actions would induce and contribute to infringement by Google AI Product users because: (1) Google subjectively believed that there was a high probability these facts existed because Google was investigating and analyzing the ’536 patent and its family members for a license or purchase transaction; and (2) Google took deliberate action to avoid learning of these facts.

205. Alternatively or additionally, Google has had actual notice that Google, its end users, or some combination of the foregoing infringe the ’536 patent with Google AI Products at least as of April 17, 2026, when Google was served with the original Complaint.

206. Google has been and is inducing infringement of the ’536 patent by actively and knowingly inducing others, such as end users, to use Google AI Products to perform the method

steps of the inventions claimed in the ’536 patent in violation of 35 U.S.C. § 271(b). On information and belief, Google knew of or was willfully blind to the ’536 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Google wrote software for Google AI Products and designed Google AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Google caused Google AI Products to be made available through its own website and third-party sellers. Google profits from its own sales and those of third parties who sell Google AI Products. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Google AI Products.

207. Google instructs and encourages users of the Google AI Products to infringe the ’536 patent. For example, Google instructs and encourages users to operate the Google AI Products such that the products provide promotional content related to one or more natural language utterances and/or responses. Google’s blog post entitled ‘Book a ride with the Google Assistant’ instructs users to make voice requests such as ‘Hey Google, book a ride to the Bluebird Cafe,’ which trigger promotional content from third-party service providers.[28]

[28] https://blog.google/products-and-platforms/products/assistant/book-ride-google-assistant/.

With your Android phone, iPhone, Google Home, or any smart speaker with the Assistant, start by saying, "Hey Google, book a ride to the Bluebird Cafe" or "Hey Google, get me a taxi to Denver International Airport." You will then be given a list of popular ride services to select from, including Uber, Lyft, Ola, Grab, GO-JEK and many more, along with more information on estimated pricing and wait times from each service. If you only want ride options from a single provider, just include their name in your request, for example, "Hey Google, get me a Lyft ride to SFO."




https://blog.google/products-and-platforms/products/assistant/book-ride-google-assistant/.

208. As another example, Google's blog post entitled 'Shop with AI Mode, use AI to buy and try clothes on yourself virtually' encourages users to describe products using natural language and receive targeted advertisements and purchase opportunities in response.[29]




https://blog.google/products-and-platforms/products/shopping/google-shopping-ai-mode-virtual-try-on-update/.

209. Google has been and is contributorily infringing the '536 patent by selling or offering to sell the Specialized AI Software for Google AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the '536 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of

[29] https://blog.google/products-and-platforms/products/shopping/google-shopping-ai-mode-virtual-try-on-update/.

35 U.S.C. § 271(c). Google's Specialized AI Software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the Specialized AI Software. On information and belief, Google wrote and updated the Specialized AI Software for Google AI Products and designed the user interface for Google AI Products to operate in an infringing manner, including after Google learned of the patent. Google causes the Specialized AI Software for Google AI Products to be made available through its own website and services, as well as through third-party sellers. On information and belief, Google also profits from its own sales and those of third parties who sell Google AI Products with the Specialized AI Software designed and coded by Google to infringe. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Google AI Products.

210. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the '536 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Google's products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of smartphones, tablets, smart speakers, smart displays, automobiles, and other devices that incorporate Google Assistant or Gemini through Google's APIs and SDKs. The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Google and third-party hardware devices and other software—including, without limitation, the telephony,

texting, web browsing, camera, media playback, and other general computing functions of devices such as Pixel smartphones, Google Home and Nest devices, and Chromebooks.

211. On information and belief, Google knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the ’536 patent because its sole function, when activated, is to perform the patented methods—namely, receiving natural language utterances, identifying requests across multiple devices, and determining and presenting promotional content. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Pixel smartphones or Google Nest devices—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

212. Google’s infringement has been, and continues to be knowing, intentional, and willful. On information and belief, Google has known of the existence of the ’536 patent, and its acts of infringement have been and are willful and in disregard for the ’536 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

213. VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the ’536 patent to the extent that any patented article is subject to a duty to mark.

214. Google’s acts of infringement of the ’536 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

215. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT 9: INFRINGEMENT OF THE '097 PATENT**

216. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

217. Google, on its own, by conduct attributable to Google, by conduct for which Google is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '097 patent by performing all steps of the patented methods in the '097 patent using Google AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Google AI Products can be found in **Exhibit T-1 (097 – Google Assistant), Exhibit T-2 (097 – Google Voice Search), and Exhibit T-3 (097 – Gemini)**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

218. To the extent any steps of the '097 patent's methods are deemed performed by another party, such as end users on end user devices, Google directs or controls such performance because Google: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Google conditions users' participation in voice interactions with Google AI Products and receipt of the benefits of Google AI Products upon users performing claimed method step(s) because, for example, Google designed its software so that user devices must receive utterances from users in order for Google's software to perform the remaining steps of the methods and provide a response to the user. Google establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides,

and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Google and Google is liable for direct infringement of the ’097 patent.

219. On information and belief, Google knew of or was willfully blind to the existence of the ’097 patent by in or around June 2018. By that time, the ’097 patent had already issued and VoiceBox notified Google of the ’097 patent in discussions where Google was evaluating a purchase of the ’097 patent and its family members. On information and belief, in or around June 2018, Google knew that the Google AI Products perform every step of the patented methods in the ’097 patent, that Google directly infringes the ’097 patent, and that its actions would induce and contribute to infringement by Google AI Product users. Alternatively or additionally, on information and belief, Google was at least willfully blind to the facts that the Google AI Products perform every step of the patented methods in the ’097 patent, that Google directly infringes the ’097 patent, and that its actions would induce and contribute to infringement by Google AI Product users because: (1) Google subjectively believed that there was a high probability these facts existed because Google was investigating and analyzing the ’097 patent and its family members for a license or purchase transaction; and (2) Google took deliberate action to avoid learning of these facts.

220. Alternatively or additionally, Google has had actual notice that Google, its end users, or some combination of the foregoing infringe the ’097 patent with Google AI Products at least as of April 17, 2026, when Google was served with the original Complaint.

221. Google has been and is inducing infringement of the ’097 patent by actively and knowingly inducing others, such as end users, to use Google AI Products to perform the method steps of the inventions claimed in the ’097 patent in violation of 35 U.S.C. § 271(b). On information and belief, Google knew of or was willfully blind to the ’097 patent and the fact that

the foregoing induced acts constitute patent infringement. On information and belief, Google wrote software for Google AI Products and designed Google AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Google caused Google AI Products to be made available through its own website and third-party sellers. Google profits from its own sales and those of third parties who sell Google AI Products. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Google AI Products.

222. Google instructs and encourages users of the Google AI Products to infringe the ’097 patent. For example, Google instructs and encourages users to operate the Google AI Products such that the products provide natural language processing based on advertisements. Google’s blog post entitled ‘Shop with AI Mode, use AI to buy and try clothes on yourself virtually’ encourages users to describe what they are looking for using natural language and receive targeted product advertisements in response.[30]

[30] https://blog.google/products-and-platforms/products/shopping/google-shopping-ai-mode-virtual-try-on-update/.




https://blog.google/products-and-platforms/products/shopping/google-shopping-ai-mode-virtual-try-on-update/.

223. As another example, Google's blog post entitled 'Let AI do the hard parts of your holiday shopping' encourages users to use voice-based shopping features, describing how users can 'go from brainstorming to browsing right within your chat' and interact with targeted product advertisements.[31]

[31] https://blog.google/products-and-platforms/products/shopping/agentic-checkout-holiday-ai-shopping/.

## Simplify your holiday shopping with Gemini

You can also now use shopping features right in the Gemini app, helping you go from brainstorming to browsing right within your chat. Whether you're searching for ideas of what to look for on Black Friday or making a holiday list on a budget, the Gemini app can now move beyond simple text suggestions and offer helpful shopping ideas, powered by Shopping Graph information you can trust. You can find shoppable product listings, comparison tables, prices from across the web and places to buy right in the Gemini app. This is available to all Gemini users in the U.S. starting today — simply ask a shopping-related question to get started.

https://blog.google/products-and-platforms/products/shopping/agentic-checkout-holiday-ai-shopping/.

224. Google has been and is contributorily infringing the '097 patent by selling or offering to sell the Specialized AI Software for Google AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the '097 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Google's Specialized AI Software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the Specialized AI Software. On information and belief, Google wrote and updated the Specialized AI Software for Google AI Products and designed the user interface for Google AI Products to operate in an infringing manner, including after Google learned of the patent. Google causes the Specialized AI Software for Google AI Products to be made available through its own website and services, as well as through third-party sellers. On information and belief, Google also profits from its own sales and those of third parties who sell Google AI Products with the Specialized AI Software designed and coded by Google to infringe. Google instructs users to use Google AI Products in an infringing

manner and provides technical support for such use, including on its website and through the user interfaces for Google AI Products.

225. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the ’097 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Google’s products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of smartphones, tablets, smart speakers, smart displays, automobiles, and other devices that incorporate Google Assistant or Gemini through Google’s APIs and SDKs. The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Google and third-party hardware devices and other software—including, without limitation, the telephony, texting, web browsing, camera, media playback, and other general computing functions of devices such as Pixel smartphones, Google Home and Nest devices, and Chromebooks.

226. On information and belief, Google knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the ’097 patent because its sole function, when activated, is to perform the patented methods—namely, providing advertisements and interpreting natural language utterances based on the advertisements. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger

products in which the Specialized AI Software is incorporated—such as Pixel smartphones or Google Nest devices—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

227. Google's infringement has been, and continues to be knowing, intentional, and willful. On information and belief, Google has known of the existence of the '097 patent, and its acts of infringement have been and are willful and in disregard for the '097 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

228. VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '097 patent to the extent that any patented article is subject to a duty to mark.

229. Google's acts of infringement of the '097 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

230. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT 10: INFRINGEMENT OF THE '456 PATENT**

231. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

232. Google, on its own, by conduct attributable to Google, by conduct for which Google is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '456 patent by performing all steps of the patented methods in the '456 patent using Google AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Google AI Products can be found in **Exhibit U-1 (456 – Gemini)**.

VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

233. To the extent any steps of the ’456 patent’s methods are deemed performed by another party, such as end users on end user devices, Google directs or controls such performance because Google: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Google conditions users’ participation in voice interactions with Google AI Products and receipt of the benefits of Google AI Products upon users performing claimed method step(s) because, for example, Google designed its software so that user devices must receive utterances from users in order for Google’s software to perform the remaining steps of the methods and provide a response to the user. Google establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Google and Google is liable for direct infringement of the ’456 patent.

234. Google has actual notice that Google, its end users, or some combination of the foregoing infringe the ’456 patent with Google AI Products at least as of April 17, 2026, when Google was served with the original Complaint.

235. Google has been and is inducing infringement of the ’456 patent by actively and knowingly inducing others, such as end users, to use Google AI Products to perform the method steps of the inventions claimed in the ’456 patent in violation of 35 U.S.C. § 271(b). On information and belief, Google knows of or is willfully blind to the ’456 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Google wrote software for Google AI Products and designed Google AI Products to operate in an infringing

manner, and instructs and markets to users to infringe the patent. Google caused Google AI Products to be made available through its own website and third-party sellers. Google profits from its own sales and those of third parties who sell Google AI Products. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Google AI Products.

236. Google instructs and encourages users of the Google AI Products to infringe the ’456 patent. For example, Google instructs and encourages users to operate the Google AI Products such that the products process voice-based natural language utterances that include requests and select and present purchase opportunities based thereon. Google’s blog post entitled ‘Shop with AI Mode, use AI to buy and try clothes on yourself virtually’ encourages users to ‘describe what you’re looking for just as you’d say it to a friend’ and receive purchase opportunities in response.[32]

[32] https://blog.google/products-and-platforms/products/shopping/google-shopping-ai-mode-virtual-try-on-update/.




https://blog.google/products-and-platforms/products/shopping/google-shopping-ai-mode-virtual-try-on-update/.

237. As another example, Google's blog post entitled 'Let AI do the hard parts of your holiday shopping' encourages users to browse and purchase products using natural language within the Gemini app.[33]

[33] https://blog.google/products-and-platforms/products/shopping/agentic-checkout-holiday-ai-shopping/.

## Simplify your holiday shopping with Gemini

You can also now use shopping features right in the Gemini app, helping you go from brainstorming to browsing right within your chat. Whether you're searching for ideas of what to look for on Black Friday or making a holiday list on a budget, the Gemini app can now move beyond simple text suggestions and offer helpful shopping ideas, powered by Shopping Graph information you can trust. You can find shoppable product listings, comparison tables, prices from across the web and places to buy right in the Gemini app. This is available to all Gemini users in the U.S. starting today — simply ask a shopping-related question to get started.

https://blog.google/products-and-platforms/products/shopping/agentic-checkout-holiday-ai-shopping/.

238. As another example, Google's support page entitled 'Get help with your shopping in Gemini Apps' instructs users step-by-step on how to use voice-based natural language to find products and complete purchase transactions directly within the Gemini web app.[34]

### Examples

To begin your shopping journey with Gemini, use natural language prompts such as:

- Find me a new laptop for college under $800.
- Compare the [Product A] headphones with the [Product B] headphones.
- I want to find a new carry-on suitcase. Help me compare options by weight, material and price.

https://support.google.com/gemini/answer/16730149#zippy=%2Cin-the-gemini-web-app.

239. Google has been and is contributorily infringing the '456 patent by selling or offering to sell the Specialized AI Software for Google AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the '456 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Google's Specialized AI Software is a material part of the patented invention.

[34] https://support.google.com/gemini/answer/16730149 .

The attached claim charts include exemplary methods executed by the Specialized AI Software. On information and belief, Google wrote and updated the Specialized AI Software for Google AI Products and designed the user interface for Google AI Products to operate in an infringing manner, including after Google learned of the patent. Google causes the Specialized AI Software for Google AI Products to be made available through its own website and services, as well as through third-party sellers. On information and belief, Google also profits from its own sales and those of third parties who sell Google AI Products with the Specialized AI Software designed and coded by Google to infringe. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Google AI Products.

240. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the '456 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Google's products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of smartphones, tablets, smart speakers, smart displays, automobiles, and other devices that incorporate Google Assistant or Gemini through Google's APIs and SDKs. The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Google and third-party hardware devices and other software—including, without limitation, the telephony, texting, web browsing, camera, media playback, and other general computing functions of devices such as Pixel smartphones, Google Home and Nest devices, and Chromebooks.

241. On information and belief, Google knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the ’456 patent because its sole function, when activated, is to perform the patented methods—namely, processing voice-based natural language utterances, selecting purchase opportunities, and tracking user interactions to update user profiles and select subsequent purchase opportunities. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Pixel smartphones or Google Nest devices—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

242. Google’s infringement has been, and continues to be, knowing, intentional, and willful. On information and belief, Google has known of the existence of the ’456 patent, and its acts of infringement have been and are willful and in disregard for the ’456 patent, without any reasonable basis for believing that it has a right to engage in the infringing conduct.

243. VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the ’456 patent to the extent that any patented article is subject to a duty to mark.

244. Google’s acts of infringement of the ’456 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

245. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT 11: INFRINGEMENT OF THE '385 PATENT**

246. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

247. Google, on its own, by conduct attributable to Google, by conduct for which Google is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '385 patent by performing all steps of the patented methods in the '385 patent using Google AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Google AI Products can be found in **Exhibit V-1 (385 – Google Assistant) and Exhibit V-2 (385 – Gemini)**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

248. To the extent any steps of the '385 patent's methods are deemed performed by another party, such as end users on end user devices, Google directs or controls such performance because Google: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Google conditions users' participation in voice interactions with Google AI Products and receipt of the benefits of Google AI Products upon users performing claimed method step(s) because, for example, Google designed its software so that user devices must receive utterances from users in order for Google's software to perform the remaining steps of the methods and provide a response to the user. Google establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides,

and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Google and Google is liable for direct infringement of the ’385 patent.

249. Google has actual notice that Google, its end users, or some combination of the foregoing infringe the ’385 patent with Google AI Products at least as of April 17, 2026, when Google was served with the original Complaint.

250. Google has been and is inducing infringement of the ’385 patent by actively and knowingly inducing others, such as end users, to use Google AI Products to perform the method steps of the inventions claimed in the ’385 patent in violation of 35 U.S.C. § 271(b). On information and belief, Google knows of or is willfully blind to the ’385 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Google wrote software for Google AI Products and designed Google AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Google caused Google AI Products to be made available through its own website and third-party sellers. Google profits from its own sales and those of third parties who sell Google AI Products. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Google AI Products.

251. Google instructs and encourages users of the Google AI Products to infringe the ’385 patent. For example, Google instructs and encourages users to operate the Google AI Products such that the products provide voice commerce. Google’s blog post entitled ‘Help shoppers take action, wherever and however they choose to shop’ encourages users to use voice-activated speakers to order products, stating that ’44% of those who use their voice-activated speaker at least

weekly say they use the device to order products they need like groceries and household items at least once a week.'[35]

252. As another example, Google's blog post entitled 'Shop Target nationwide on Google Express and with your Assistant' instructs users to complete purchases by voice, explaining that users can 'just say Ok Google, buy a kids bomber jacket from Target.'[36]

—so if you're on the go and remember you need a birthday gift for the weekend, you can just say "Ok Google, buy a kids bomber jacket from Target."




https://blog.google/products-and-platforms/products/assistant/shop-target-nationwide-google-express-and-google-assistant/.

[35] https://blog.google/products-and-platforms/products/ads/shopping-actions/.
[36] https://blog.google/products-and-platforms/products/assistant/shop-target-nationwide-google-express-and-google-assistant/.

253. As another example, Google's support page entitled 'Get help with your shopping in Gemini Apps' instructs users on how to click 'Buy' on product listings, review order details, and click 'Pay with GPay' to complete voice-commerce purchase transactions within the Gemini app.[37]

## Make purchases from eligible merchants & manage your orders from the Gemini web app

**Important:** To make purchases in Gemini with Google Pay, you must have an address and valid payment method saved to your Google Account. Learn how to manage your addresses and payment methods.

### Buy a product from your Gemini chat

You can buy products from select merchants from your Gemini chat.

1. Go to gemini.google.com .
2. Ask Gemini about a product you're shopping for.
3. In Gemini's response, select the product you want to buy.
    - There's a "Buy" button on product listings that are eligible for purchase within the Gemini web app.
4. Select **Buy**. This opens the checkout process.
5. Review your order details.
    - Your payment method and shipping address is prefilled from Google Pay.
6. Select **Pay with GPay**.
    - Your payment information is encrypted and kept private as Gemini makes the purchase for you.
    - Any post-purchase follow ups, such as order confirmation emails, will come directly from the merchant.

https://support.google.com/gemini/answer/16730149#zippy=%2Cin-the-gemini-web-app.

254. Google has been and is contributorily infringing the '385 patent by selling or offering to sell the Specialized AI Software for Google AI Products, knowing the software to be

[37] https://support.google.com/gemini/answer/16730149#zippy=%2Cin-the-gemini-web-app.

especially made or especially adapted for practicing the inventions of the '385 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Google's Specialized AI Software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the Specialized AI Software. On information and belief, Google wrote and updated the Specialized AI Software for Google AI Products and designed the user interface for Google AI Products to operate in an infringing manner, including after Google learned of the patent. Google causes the Specialized AI Software for Google AI Products to be made available through its own website and services, as well as through third-party sellers. On information and belief, Google also profits from its own sales and those of third parties who sell Google AI Products with the Specialized AI Software designed and coded by Google to infringe. Google instructs users to use Google AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Google AI Products.

255. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the '385 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Google's products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of smartphones, tablets, smart speakers, smart displays, automobiles, and other devices that incorporate Google Assistant or Gemini through Google's APIs and SDKs. The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Google and

third-party hardware devices and other software—including, without limitation, the telephony, texting, web browsing, camera, media playback, and other general computing functions of devices such as Pixel smartphones, Google Home and Nest devices, and Chromebooks.

256. On information and belief, Google knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the '385 patent because its sole function, when activated, is to perform the patented methods—namely, receiving natural language utterances, searching databases of products or services, and completing purchase transactions based on voice commands. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Pixel smartphones or Google Nest devices—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

257. Google's infringement has been, and continues to be, knowing, intentional, and willful. On information and belief, Google has known of the existence of the '385 patent, and its acts of infringement have been and are willful and in disregard for the '385 patent, without any reasonable basis for believing that it has a right to engage in the infringing conduct.

258. VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '385 patent to the extent that any patented article is subject to a duty to mark.

259. Google's acts of infringement of the '385 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

260. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**DEMAND FOR A JURY TRIAL**

VoiceBox demands a jury trial on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, VoiceBox respectfully requests the Court to enter judgment in favor of VoiceBox and against Google as to all claims asserted herein as follows:

a. Judgment that Google has infringed and is infringing, directly and indirectly, the '681 patent, '765 patent, '249 patent, '341 patent, '699 patent, '176 patent, '274 patent, '536 patent, '097 patent, '456 patent, and '385 patent;

b. Judgment that Google account for and pay damages adequate to compensate VoiceBox for Google's infringement of the VoiceBox Patents, including for any infringing acts not presented at trial and costs, pursuant to 35 U.S.C. § 284;

c. Judgment that Google has willfully infringed the '681 patent, '765 patent, '249 patent, '341 patent, '699 patent, '176 patent, '274 patent, '536 patent, '097 patent, '456 patent, and '385 patent and an increase in the damages award to VoiceBox of up to three times the amount assessed, pursuant to 35 U.S.C. § 284;

d. That this Court declare this case exceptional and award VoiceBox reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285;

e. That VoiceBox be granted pre-judgment and post-judgment interest on the damages; and

f. That VoiceBox be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: July 24, 2026

Respectfully submitted,

**FARNAN LLP**

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Of Counsel:

Edward G. Poplawski
Erik J. Carlson
Caleb J. Bean
Madelaine Wieland
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Phone: (213) 576-1000
Fax: (213) 576-1100
Email: edward.poplawski@alston.com
Email: erik.carlson@alston.com
Email: caleb.bean@alston.com
Email: madelaine.wieland@alston.com

Theodore Stevenson, III
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Phone: (214) 922-3400
Fax: (214) 922-3899
Email: ted.stevenson@alston.com

Natalie C. Clayton
**ALSTON & BIRD LLP**
90 Park Avenue, 15th Floor
New York, NY 10016
Phone: (212) 210-9400
Fax: (212) 210-9444
Email: natalie.clayton@alston.com

David Greenbaum
**GREENBAUM LAW LLC**
210 Allison Court
Englewood, NJ 07631
Email: david@greenbaum.law

*Attorneys for Plaintiff VB Assets, LLC*